Argued 5 December, 1899; decided 15 January, 1900.

**HAMERLYNCK v. BANFIELD.**

[59 Pac. 712.]

1. NEGLIGENCE—QUESTIONS FOR JURY.—Where defendants cut apertures in the floor of a public wagon bridge, through which to dump filling, and provided planks with which to cover them while not in use, and, after one of defendants' servants had finished dumping through one of such apertures, covered it, and beckoned to plaintiff, who was driving across the bridge, to pass over, and the wheels of his buggy displaced the planks covering the aperture, causing plaintiff to fall on the bridge, injuring him, it was proper to submit to the jury whether defendants exercised reasonable care to prevent the injury, and whether plaintiff was guilty of contributory negligence in attempting to cross the bridge, or in driving on the planks as he did.

2. CONTRIBUTORY NEGLIGENCE.—Where apertures had been cut in the floor of a public wagon bridge, and planks were provided with which to cover such apertures, the bridge not being closed to the public, the fact that plaintiff, who was injured by being precipitated through one of such openings, could have gone over by another street, did not constitute contributory negligence on his part as matter of law.

3. RELIANCE ON ANOTHER'S HAVING DONE HIS DUTY.—Where defendants rendered a public wagon bridge unsafe by cutting apertures in the roadway, and had undertaken to render it passable for teams while they used such apertures to dump dirt through the bridge, a person driving over the bridge had a right to assume that the method employed by defendants to render the bridge passable was effective.

4. INSTRUCTION—EXEMPLARY DAMAGES.—Where defendant had rendered a public wagon bridge unsafe by cutting apertures in the roadway, and had undertaken the responsibility of making the bridge passable for teams in the meantime, an instruction that if defendant had proceeded without regard to public rights, and in a careless and reckless manner, by reason of which a person driving over the bridge was injured, exemplary damages might be assessed, was proper: *Day* v. *Holland*, 15 Or. 464, cited.

From Multnomah :   E. D. SHATTUCK, Judge.

Action for damages by Leo Hamerlynck against M. C. Banfield and Thomas Rand, partners, resulting in a judgment for plaintiff.                                   AFFIRMED.

For appellants there was a brief over the names of *Gammans & Lamson* and *Edward B. Watson*, with an oral argument by *Mr. Watson*.

For respondent there was a brief over the name of *Stott, Boise & Stout*, with an oral argument by *Mr. Raleigh Stott*.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

This is an action for damages, arising out of the alleged negligence of the defendants in cutting holes in a bridge on a public street in the City of Portland, and leaving them insecurely covered, by reason whereof the plaintiff was thrown from his wagon in attempting to cross such bridge, and injured.   The defense interposed was contributory negligence of plaintiff in attempting to pass over the bridge at a place where the danger was apparent, or in attempting to use the bridge at all, there being an-

other route by which he could have avoided it altogether.
A nonsuit was asked when the plaintiff had rested his
case, and this necessitates setting out the effect and tend-
ency of much of the testimony introduced up to that period
in the trial of the cause.   The bridge where the accident
occurred is situated upon Twelfth Street, extending north
and south from Quimby to Overton Street.   As the plain-
tiff, with a wagon drawn by one horse, and loaded with
junk in the back end of the bed, approached it from the
north, the defendants were engaged with a number of
teams in depositing dirt under it.   For the purpose of
facilitating the work, they had cut or opened several holes
or apertures in the floor on each side thereof, from a foot
to two feet from the sidewalk, and others nearer, as well
as one or more about the center.   These holes were from
six to eight feet in length, running lengthwise of the
bridge, and about two feet, or less, in width.   For the
convenience of the teamsters, and at the same time to
permit the use of the bridge by the public, the defendants
provided two planks of suitable length for the apertures,
a foot or more in width, and two inches or more in thick-
ness.   Two of these were placed over each aperture when
not in use, a plank of the bridge floor being left uncut to
support them in the middle.   The defendants' teamsters,
in hauling, drove their horses one on each side of the aper-
ture, so that the wheels of the wagon would pass on the out-
side upon the solid floor, leaving the bed over the aperture.
The planks were then turned up against the wheels, and
the bottom of the wagon bed removed, so as to let the load
drop through, and, when the team moved away, the planks
were replaced.   The point where the plaintiff was injured
is on the east side of the bridge, near the north end.   Two
holes had been cut there, abreast of each other, one from
twelve inches to two feet from the sidewalk, and the other
some two feet from that.

Jan. 1900.] HAMERLYNCK v. BANFIELD. 439

The plaintiff drove his horse between the holes or apertures on the solid roadway, intending that the wheels of his wagon should pass over the planks, upon either side, covering the apertures. It is probable that the front wheels passed upon the planks without displacing them, but when the hind wheels struck them they became displaced in such manner that both wheels on one side dropped down, causing one or both upon the other side to drop in also, and the plaintiff was precipitated upon the bridge, whereby he was injured. As the plaintiff was approaching the bridge, he could readily see the teamsters and others at work thereon, and observed a team drive away from one of the holes (where the injury occurred), and he testified that, as he neared the bridge, Rivers, one of defendants' employees, replaced the planks over the hole; that he was about to or had stopped his horse to await Rivers' action in replacing them; that Rivers motioned or beckoned him to come forward, and, in response thereto, he passed upon the planks, and was injured. At the time, a wagon was being unloaded, further ahead, on the westerly side of the bridge; and the evidence shows that it would have been difficult, if not impracticable, to pass it upon the solid roadway without coming in contact with planks laid over or covering the apertures in the bridge. Indeed, there was some evidence tending to show that, if the bridge had been clear of teams and wagons, it would have been impracticable to drive through upon the solid roadway. Plaintiff testified that he supposed the planks were secure and safe to pass over; that he would not have gone forward if Rivers had not beckoned him, by reason of which he was assured that it was safe to drive on; and that his purpose in going by Twelfth Street was to make some purchases thereon, to the south of the bridge. The defendants contend (1) that the evidence thus produced does

not tend to establish any act of negligence on their part; and (2) that it establishes the fact that plaintiff was guilty of contributory negligence, and was himself responsible for the accident; and that in either case the nonsuit should have been granted.

1.   It must be premised as an admitted fact that defendants, by positive acts of their own, made the apertures or openings in the bridge upon the public highway, which was then in public use, and thereby rendered it unsafe and insecure for general travel.   There was no attempt in the meanwhile to close up the roadway against the public, nor to give special warning that the bridge was unsafe for use; while, upon the other hand, its use was permitted to those passing that way.   This condition of affairs devolved upon them the duty of exercising such care as reasonable, cautious, and prudent men would exercise under like conditions; that is to say, they were required to use such care as prudence would dictate in covering and securing the apertures, and to take suitable and reasonable precautions against the occurrence of accidents or injury to those having occasion to pass upon the bridge and over the apertures.   Whether or not the defendants exercised such reasonable care, prudence, and precaution in the present case was a matter entirely for the jury.   There was evidence submitted touching the manner in which they attempted to provide for the public, and to give safe passage over the bridge; and the question was a proper one to be left to them whether or not, under the circumstances, the defendants had used the proper care and precaution.   This disposes of the first contention.

2.   Does the evidence show such contributory negligence on the part of the plaintiff as that the court below should have taken the case from the jury?   Several reasons are advanced on account of which it is claimed that

such negligence should be imputed to him : (1) He saw
the men working on the bridge, for some distance, while
approaching ; knew that apertures had been made in the
floor ; saw Rivers replace the planks over one of the aper-
tures, into which his wagon was precipitated ; was cogni-
zant of the manner in which the openings were covered ;
and, having had the means of observing and of acquiring
actual knowledge of the condition of the bridge, when he
attempted to drive over he took the risk of getting through
safely upon himself.    (2) He should have gone by way
of Eleventh Street, and not have attempted to cross the
bridge at all.    (3) He should have waited until the team
then unloading on the west side of the bridge had passed
off, and then have driven through on the unobstructed
roadway.    And (4) he should have driven his horse upon
the planks covering one of the apertures, and allowed the
wheels of the vehicle to pass to the outside upon the solid
floor.    The rule of law in this state touching the recovery
of damages by reason of negligence is that the plaintiff
himself must not have contributed to the injury of which
he complains by his own negligent acts or conduct.    The
doctrine of comparative negligence has been rejected as
unsound in principle, and, if the plaintiff should recover,
it must be for the negligence of the defendant, without
proximate contributory negligence on his own part (*Moses*
v. *Southern Pac. R. R. Co.* 18 Or. 385, 23 Pac. 498, 8 L. R.
A. 135); so that a person cannot go heedlessly, and with-
out due care and caution, into danger, and then claim
damages for an injury ensuing, when the fault is attribu-
table to his own heedlessness and want of ordinary care
and attention to his own safety : *Beck* v. *Vancouver Ry.
Co.* 25 Or. 32 (60 Am. & Eng. R. R. Cas. 96, 34 Pac. 753).
It is very manifest that plaintiff saw and observed the
men and teams at work upon the bridge, and was aware
of its condition as it pertained to the openings or aper-

tures that had been made in the floor, and he must have obtained some knowledge of the manner in which the openings were covered. But he knew also that the bridge was being used by the public ; that other teams than those used by the defendants were passing and suffered to pass and repass over it in the condition in which they had placed it, and that it was not then closed against the public. He had a right to assume that the bridge was safe, under the conditions suggested, and to act upon that assumption. But there is a suggestion in the evidence of an affirmative act of defendants' agent in directing the plaintiff, through a motion of the hand, to cross at the very place where the attempt was made. The plaintiff says he moved forward upon the bridge at the suggestion of Rivers, who beckoned him to come on. He says, further, that he supposed the boards were secured, or would be kept in place by nails at the outer edge ; so that he considered he was safe in driving over at the time and place he selected. There is here enough to go to the jury touching the question whether the plaintiff acted with reasonable and ordinary care and prudence in attempting to cross the bridge under the circumstances and conditions then present, and in view of the inducement and prompting of the defendants' agent. Under the conditions suggested, the plaintiff had a right, if he so desired, to go by way of Twelfth Street, rather than Eleventh, and it was not negligence in him to adopt the former rather than the latter route.

As it pertains to the third reason assigned, it is sufficient to say there was evidence tending to show that the roadway was not clear in the center of the bridge, even if there had been no obstruction by a team ; so that it became a matter for the jury to determine, in connection with the other testimony bearing upon the condition of the bridge, whether he should have waited for the team

to drive out, and take the center of the bridge. So, with the fourth assignment, it was a question for the jury to decide whether the plaintiff acted with reasonable caution in permitting the wheels of his vehicle to go upon the planks, instead of driving his horse upon or over them.

3. One of the instructions given to the jury is as follows: "The plaintiff would have the right to rely upon the boards being placed over the holes. The plaintiff would have the right to assume, seeing the boards placed there, that they would be placed so that they would be safe for him to pass over. He is not obliged to get down and examine the place. He had a right to presume the other parties had attended to their duty in regard to placing the boards over the holes." It is urged that the plaintiff had no right to assume that the boards were safely placed. But, considering that the defendants, through their agents and servants, had first rendered the bridge unsafe by their positive acts, and had taken upon themselves the responsibility of rendering it passable for teams in the meanwhile, we think he had. He had a right to rely upon the rightful performance of the duty which devolved upon the defendants, unless he was specially warned, or could reasonably have seen or discovered, that such duty had not been properly performed; in which event he would have taken the responsibility of the danger upon himself, and have thus contributed to his own injury. The whole matter was properly left to the jury to determine.

4. Another instruction complained of is one permitting the assessment of exemplary or punitive damages, it being contended that the rule of law allowing such relief was not applicable to the facts in this case. The rule which allows the assessment of damages of that nature is stated by Mr. Justice STRAHAN (in *Day* v. *Holland*, 15 Or. 464, 469, 15 Pac. 858), as follows: "Where a tort is

committed with a bad motive, or so recklessly as to imply a disregard of social obligations, and generally when the defendant appears to have done the act wantonly, maliciously, or wickedly, the jury may, in their discretion, give exemplary damages." The instruction given was in harmony with the rule, and, we think, was applicable under the evidence. It was, in effect, left to the jury to determine whether the defendants had proceeded without regard to public rights, and with such carelessness and recklessness as to imply a disregard of social obligations. If such was the case, aggravated damages might be properly assessed. This disposes of all the questions submitted, and, there being no error found in the record, the judgment of the court below will be affirmed.    Affirmed.

---

Decided 15 January, 1900; rehearing denied.