Argued September 7, modified December 13, 1967

NOE, *Respondent, v.* KAISER FOUNDATION
HOSPITALS ET AL, *Appellants.*
435 P. 2d 306

*Leo Levenson,* Portland, argued the cause for appellants. With him on the briefs was Pat Dooley, Portland.

*William E. Hurley,* Portland, argued the cause for respondent. With him on the brief were Glen R. Kuykendall, Bernard, Bernard & Hurley, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

HOLMAN, J.

This is an action for damages because of an unauthorized circumcision. Defendants appealed from

that portion of the judgment, entered on a jury verdict, which assessed punitive damages.

Plaintiff's parents contracted with the defendant, Kaiser Foundations Health Plan of Oregon, for the furnishing of medical and hospital services to their family. The other defendants are corporations and individuals through whom the plan furnishes these services.

During a prenatal care conference with a doctor on the staff of the defendant, Permanente Clinic, plaintiff's parents told the doctor that if the child were a boy they did not want him circumcised. The parents testified the doctor recorded this information in the mother's medical record. At the time the mother went to the hospital for delivery she told the admissions clerk that if the child were a boy he was not to be circumcised. The admissions records, which were supposed to go to the delivery room with the mother for the delivering doctor's information, were stamped "CIRCUMCISION NOT AUTHORIZED."

Plaintiff was delivered by a resident under the supervision of a staff physician. After delivery, the doctor left the delivery room and the resident circumcised plaintiff. There were no unusual effects from the circumcision and there is no claim it was incorrectly performed. The same day plaintiff was delivered, it was discovered that plaintiff had been circumcised without authorization and a member of the staff informed the mother of it and telephoned the father to the same effect.

The only assignments of error relate to the submission of the question of punitive damages to the jury. The law in Oregon relating to punitive damages is far from clear. Other than in medical malpractice

cases, the court has, with one exception,[1] refused to allow punitive damages for negligent injury to the person. Action which is classed as wanton, willful or malicious has been required. In malpractice cases gross negligence is said to justify punitive damages. *McElwain v. Georgia-Pacific,* 245 Or 247, 421 P2d 957 (1966), dissenting opinion of DENECKE, J.; *Olson v. McAtee,* 181 Or 503, 182 P2d 979 (1947); *Holland v. Eugene Hospital et al,* 127 Or 256, 270 P 784 (1928); *Gill v. Selling et al,* 125 Or 587, 267 P 812, 58 ALR 1556 (1928); *Rennewanz v. Dean,* 114 Or 259, 229 P 372 (1925). The explanation for a different rule in malpractice cases is "* * * the character of the defendant's profession and the obligation it imposes * * *." *Olson v. McAtee* at 520.

In *Rennewanz v. Dean,* defendant treated plaintiff by injecting his hemorrhoids. While in the defendant's office receiving an injection, plaintiff began to hemorrhage. Defendant left plaintiff lying on a couch in defendant's office for 48 hours. He was unattended in the nighttime. Plaintiff's hemorrhaging continued until he was removed to the hospital by his wife. The court held it to be a proper case for punitive damages.

In *Gill v. Selling,* plaintiff returned to defendant's office to receive the results of a physical examination. While seated in the waiting room, a nurse, without asking plaintiff's name, told plaintiff to undress for the purpose of a test. Defendant then performed a spinal puncture on plaintiff which was intended for another patient. The court held it to be a mistake and not a case for punitive damages.

In *Holland v. Eugene Hospital et al,* defendant doctor treated a boy for a broken femur. After the bone

---

[1] Hamerlynck v. Banfield, 36 Or 436, 59 P 712 (1900).

was set defendant became aware that the ends of the bones were in a slipped and crooked position, but failed to correct it. The result was one leg which was five inches shorter than the other. The trial court submitted punitive damages. It is not clear whether the court held it to be a proper case for punitive damages but it affirmed the award under the powers given to it under Art VII, § 3 of the Oregon Constitution.

In *Olson v. McAtee,* plaintiff suffered a broken femur. Defendant left the broken ends of the bone overlapping when he used improper methods of setting it. It was left in the cast though defendant knew by the use of X-rays that the bone was not in alignment. Defendant then left town for ten days without making any arrangements for other medical attention. The bone commenced to heal in the misaligned position. The cast restricted the circulation and infection set in. Defendant's sole aid was to put on successively heavier traction. When pus and blood began to ooze out of the cast, his only suggestion was to soak the cast in water to loosen it from the skin. The court held it to be a proper case for punitive damages.

In *Cholia v. Kelty,* 155 Or 287, 63 P2d 895 (1937), defendant agreed to repair two hernias for plaintiff during the same operation. He only repaired one and as a result, plaintiff's other hernia subsequently became greatly aggravated. The court held it was not a case for punitive damages because there was no willful neglect.

An examination of the foregoing cases indicates that the determinative factor is the presence or lack of an aggravated disregard of the professional duties and standards for the medical treatment of patients. This disregard is evident in *Rennewanz v. Dean,* where

the patient was allowed to lie unattended and bleeding for 48 hours and in *Olson v. McAtee,* where the doctor deliberately allowed the leg to heal when the bones were overlapping and not in alignment while he left the patient unattended. On the other hand, it is not evident in *Gill v. Selling,* and *Cholia v. Kelty,* where there was only inadvertence and mistake.

Punitive damages can only be justified on the theory of determent. See Hodel, The Doctrine of Exemplary Damages in Oregon, 44 Or L Rev 175 (1965). It is only in those instances where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent, that the use of punitive damages is proper. Regardless of the nomenclature by which a violation of these obligations is described (grossly negligent, willful, wanton, malicious, etc.), it is apparent that this court has decided that it is proper to use the sanction of punitive damages where there has been a particularly aggravated disregard by a member of the medical profession of his professional duties (preservation of life and health). There would appear to be no rational justification for any separate rule or language applicable to the medical profession. It is proper, however, in determining whether there has been a sufficiently aggravated violation of societal interests to justify the sanctions of punitive damages as a preventative measure, that any duty owed by the offending party be taken into consideration. This is so whether the offending person be a physician, lawyer, electrician, or any other person who may owe a duty by virtue of his relationship to the offended party.

An examination of the specific evidence which plaintiff says justifies punitive damages is now in order to determine whether it demonstrates a suffi-

ciently aggravated disregard of defendants' duties to justify the use of punitive damages. Plaintiff claims that the failure of defendants to produce at trial the mother's medical record, in which they saw the doctor write "No circumcision" is sufficient to raise the inference that defendants were disregarding plaintiff's rights. However, the defendants did produce her admissions chart which was clearly stamped "NO CIRCUMCISION AUTHORIZED." There was never any evidence of a contention by defendants that the circumcision was actually authorized by plaintiff's parents or that there was not information available that there was to be no circumcision.

The resident testified she asked if circumcision was authorized and was told "Yes." The person she asked was never produced to confirm her testimony. Also the resident testified that she had not seen the patient's admission chart and then subsequently testified to a notation that was on the chart. The evidence fails to disclose whether she was aware of the notation to which she testified by virtue of seeing the chart or by being told of it.

The resident was only authorized to do surgical procedures as an assistant and there was no one supervising her at the time of the circumcision. Also, two days after the circumcision the resident denied to the mother that she delivered the baby.

After the father had been informed of the circumcision he telephoned various persons at the hospital in an effort to get information why it had been performed and who had done it, but was not successful. However, on the day the operation was performed a staff doctor informed both mother and father.

■■ Inconsistencies, evasions and untruths made

subsequent to the occasion have been considered by this court to be only evidence of an attempt to avoid responsibility for past actions rather than evidence of previous disregard for consequences. *O'Harra v. Pundt*, 210 Or 533, 550, 310 P2d 1110 (1957). The subsequent statements of the resident fall into this category.

■ When the remainder of the evidence is taken in a light most favorable to plaintiff, it is indicative of negligence and inadvertence and appears to us to be wholly lacking in that aggravated disregard of defendants' duties which has heretofore been considered by this court as a prerequisite in malpractice cases to the allowance of punitive damages for deterrent purposes.

The judgment of the trial court is modified by the deletion of that portion relating to punitive damages.