Argued and submitted July 18, reversed and
remanded November 5, 1979

SCHUMANN,
*Respondent,*
*v.*
CROFOOT,
*Appellant.*

(No. A7607-10020, CA 12578)

602 P2d 298

[53]

Margaret H. Leek Leiberan, Portland, argued the cause for appellant. With her on the briefs were Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Barry L. Adamson, Portland, argued the cause for respondent. With him on the brief was Richard A. Uffelman, Portland.

Before Schwab, Chief Judge, Thornton, Buttler and Joseph, Judges.

BUTTLER, J.

Schwab, C. J., specially concurring opinion.

**BUTTLER, J.**

Plaintiff brought this action against defendant, as Conservator of the estate of B. Glade Birch, alleging in two counts that Birch, who had been plaintiff's attorney, committed professional negligence and also fraud in connection with a transaction in which plaintiff transferred $12,000 to Birch on the understanding that that sum was to be loaned to a third party. Plaintiff sought compensatory damages of $12,000 in both his negligence and his fraud counts, and sought punitive damages for the alleged fraud. The jury found in favor of plaintiff on both counts, awarding him $12,000 general damages and $12,500 punitive damages. Defendant appeals from the judgment entered on the verdict. We reverse and remand.

There was evidence that Birch was suffering from a psychotic disorder at the time he made the false representations which are the basis for plaintiff's allegation of fraud. Defendant contends that, as a matter of law, an "insane" person cannot be held liable for his torts, either negligent or fraudulent, and may not be assessed punitive damages.

With respect to liability for negligence, we accept the rule as stated in the Restatement (Second) of Torts § 283 B (1965), which provides:

> "Unless the actor is a child, his insanity or other mental deficiency does not relieve the actor from liability for conduct which does not conform to the standard of a reasonable man under like circumstances."

Among the bases for the rule set forth in comment b to that section are:

> "1. The difficulty of drawing any satisfactory line between mental deficiency and those variations of temperament, intellect, and emotional balance which cannot, as a practical matter, be taken into account in imposing liability for damage done.
> "2. The unsatisfactory character of the evidence of mental deficiency in many cases, together with the

ease with which it can be feigned, the difficulties which the triers of fact must encounter in determining its existence, nature, degree, and effect; and some fear of introducing into the law of torts the confusion which has surrounded such a defense in the criminal law. Although this factor may be of decreasing importance with the continued development of medical and psychiatric science, it remains at the present time a major obstacle to any allowance for mental deficiency.

"3. The feeling that if mental defectives are to live in the world they should pay for the damage they do, and that it is better that their wealth, if any, should be used to compensate innocent victims than that it should remain in their hands.

"4. The belief that their liability will mean that those who have charge of them or their estates will be stimulated to look after them, keep them in order, and see that they do not do harm."

*See also* comment c to § 283 B; and Alexander and Szasz, *Mental Illness as an Excuse for Civil Wrongs*, 43 Notre Dame Lawyer 24 (1967). The trial court did not err in instructing the jury that Birch's mental state was not a defense to the negligence count.

Defendant's contention with respect to the fraud count is more substantial: Birch was incapable of forming the requisite intent because of his mental illness, and having shown that Birch was mentally ill at the time in question defendant appears to contend that ended the matter. He relies, in part, on the following statement in 41 Am Jur 2d 646, Incompetent Persons, § 109:

"Generally, an insane person is incapable of having an intent to defraud to the same extent as he is incapable of giving his assent to a contract, and hence he cannot be held in an action for fraud based on intent. * * *"

[56]

Such a proposition is too pat, too unequivocal, to be an acceptable basis for decision. Not only is the authority cited in its support meager,[1] but the use of the word "insanity" makes such a rule meaningless, at least under present day Oregon law. The fact that a conservator of Birch's estate was appointed shortly after the alleged wrongs to plaintiff occurred tells us only that Birch was an "incapacitated person" (ORS 126.003(4))[2] and that, as such, he was a "protected person" (ORS 126.003(9)).[3] However, neither status necessarily means that Birch was incompetent or suffered from such degree of mental illness that he was incapable of committing an intentional tort. In fact, ORS 126.223[4] recognizes that a protected person may be mentally competent.

Furthermore, the statutes governing civil commitments of mentally ill persons (ORS ch 426) do not use the word "insane," and define the term "mentally ill

---

[1] We are more inclined to accept the state of the case law as described by William J. Curran, in his article, *Tort Liability of the Mentally Ill and Mentally Deficient*, 21 Ohio St L J 52, 58 (1960), where he states, "I have found only three decisions under American common law involving insane persons and the tort of misrepresentation," and concludes:

"* * * [W]e certainly cannot assert an American common law rule of responsibility of the insane for misrepresentation. The cases are too few, they are in conflict, and they do not present any well-developed theory of liability or nonliability."

[2] ORS 126.003(4) provides:

" 'Incapacitated person' means a person who is unable, without assistance, to properly manage or take care of himself or his personal affairs."

[3] ORS 126.003(9) provides:

" 'Protected person' is a minor or other person for whom a conservator has been appointed or other protective order has been made."

[4] ORS 126.223 provides:

"(1) A protected person, if mentally competent, may make wills, change beneficiaries of life insurance and annuity policies and exercise any power of appointment or any elective right to share in the estate of a deceased spouse.

"(2) Except as provided in this section and ORS 126.293, a protected person for whom a conservator has been appointed cannot convey or encumber his estate or make any contract or election affecting his estate."

[57]

person" very broadly (ORS 426.005(2)).[5] Even though a person has been committed to a state hospital for treatment of a mental illness he is not automatically deemed to be incompetent; rather, a statutory procedure is provided to make that determination. ORS 426.295.[6]

While the foregoing discussion is only peripheral to the issue here presented, it serves to make the point that authorities setting forth an unequivocal rule of nonliability based upon "insanity" of the defendant in

[5] ORS 426.005(2) provides:

"(2) 'Mentally ill person' means a person who, because of a mental disorder, is either:

"(a) Dangerous to himself or others; or

"(b) Unable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety."

[6] ORS 426.295 provides:

"(1) No person admitted to a state hospital for the treatment of mental illness shall be considered by virtue of the admission to be incompetent.

"(2) Upon petition of a person committed to a state hospital, or his guardian, relative or creditor or other interested person, the court of competent jurisdiction in the county in which the state hospital is located, or if the petitioner requests a hearing in the county where the commitment originated, then the court in such county shall hold a hearing to determine whether or not the person in the state hospital is competent. A guardian who is not the petitioner shall be notified of the hearing at least three days before the date set for hearing. After the hearing the court shall enter an order pursuant to its finding and serve a copy of the order on the petitioner and forward a copy of the order to the committing court.

"(3) When a person committed to a state hospital has been declared incompetent pursuant to subsection (2) of this section and is discharged from the hospital, the superintendent of the hospital shall advise the court which entered the order of incompetency whether or not, in the opinion of the chief medical officer of the hospital on the basis of medical evidence, the person is competent. The superintendent shall make a reasonable effort to notify the discharged person of the advice to the court. If the court is advised that the person is competent, the court shall enter an order to that effect. If the court is advised that the person is not competent, upon petition of the person, his guardian, relative or creditor or other interested person, the court shall hold a hearing to determine whether or not the discharged person is competent. The court shall serve a copy of any order entered pursuant to this subsection on the person and forward a copy of such order to the committing court."

a civil case are out of context in Oregon. The parties have cited no Oregon authorities, and we have found none, dealing with the question of whether a mentally ill person may be liable for an intentional tort such as fraud. However, *Kirkpatrick v. U. S. National Bank*, 264 Or 1, 502 P2d 579 (1972), stands for the general proposition that one under a legal disability (minority) may be held liable for a malicious tort; the Court indulged in the presumption that a minor who is 15 years old is capable of malice. 264 Or at 7. It is fair to assume that the presumption could have been, but was not, rebutted in *Kirkpatrick.* In short, the disabled person's legal disability was not a defense as a matter of law; the question was one of fact.

We conclude that an evidential showing that Birch suffered from a mental illness at the time of the alleged tort does not, as a matter of law, preclude his being liable for the wrong. It is a question of fact whether his mental illness was such that he was incapable of committing fraud. Normally, it is up to the trier of fact to decide the question, although there may be cases where the evidence is such that the court may withdraw the issue from the jury because reasonable minds could not differ. The case at bar is not such a case.

The same thing may be said with respect to a mentally ill defendant's liability for punitive damages: it is a question of fact whether the defendant's mental state was such that punitive damages are appropriate. In *McElwain v. Georgia-Pacific*, 245 Or 247, 249, 421 P2d 957 (1966), the Supreme Court said:

> "Although this court has on occasion indulged in the dictum that punitive damages are not 'favored in the law,' it has, nevertheless, uniformly sanctioned the recovery of punitive damages whenever there was evidence of a wrongful act done intentionally, with knowledge that it would cause harm to a particular person or persons. * * * Malice is the term most frequently used in our decisions to define a state of mind that will justify the imposition of punitive

[59]

damages. Malice, as a basis for punitive damages, signifies nothing more than a wrongful act done intentionally, without just cause or excuse. * * * The intentional disregard of the interest of another is the equivalent of legal malice, and justifies punitive damages for trespass. * * * Where there is proof of an intentional, unjustifiable infliction of harm with deliberate disregard of the social consequences, the question of award of punitive damages is for the jury. * * *." (Citations omitted.)

In *Senn v. Bunick*, 40 Or App 33, 41, 594 P2d 837 (1979), after quoting the foregoing language from *McElwain*, we said:

"* * * More succinctly, it has been stated that 'it is proper to use the sanction of punitive damages where there has been a particularly aggravated disregard' of the rights of others and 'where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent * * *.' *Noe v. Kaiser Foundation Hosp.*, 248 Or 420, 425, 435 P2d 306 (1967), 27 ALR3d 1268 (1969). The impact of punitive damages is supposed to be a 'civilizing influence.' *Douglas v. Humble Oil, supra*, 251 Or at 316.

"It is not necessary for plaintiffs to show actual malice or ill will on the part of defendants. It is enough if the evidence is sufficient to permit the jury to conclude the defendants' conduct amounted to an intentional disregard of the plaintiffs' rights. [Footnote omitted.] At the heart of all the punitive damages cases is the idea that in some instances deliberate or careless conduct is so much in disregard of the rights of another that it should lay the actor open to monetary punishment that would tend to deter that sort of conduct in the future. *See* Hodel, *The Doctrine of Exemplary Damages in Oregon*, 44 Or L Rev 175, 183-86 (1965). The term 'smart money' is ancient and apt."

While we recognize that there is authority that "insanity" is an absolute defense to a claim for punitive damages, 41 Am Jur 2d, Incompetent Persons, § 112, we reject that view for the same reasons we reject it with respect to "insanity" as a defense to a fraud

action. In *Kirkpatrick v. U. S. National Bank, supra,*
the Court said:

> "* * * We have previously held that the legal
> justification for punitive damages is determent and
> that such damages will only be allowed when the
> violation of societal interests is sufficiently great and
> the conduct involved is of a kind that sanctions would
> tend to prevent. * * *

> "We hold that the vandalizing of a house by a
> minor who is old enough to know better, as in this
> case, falls within this rule." (Citations omitted.) 264
> Or at 7.

We do not understand the law in Oregon to be that
the sole criterion for allowing an award of punitive
damages is the deterrability of defendant, although
there is language, like that quoted above from *Kirk-
patrick,* which suggests that thought. *Cf. Ashcraft v.
Saunders,* 251 Or 139, 444 P2d 924 (1968), where the
court said a deceased wrongdoer is "beyond punish-
ment" (251 Or at 144), but *held* that punitive damages
were not within the survival statute and were not
recoverable for that reason. If that criterion were the
only one, the question would be the state of mind,
mental capacity or personality traits of the defendant
at the time of trial, not at the time of the wrongful act,
and would open up a Pandora's box of mischief.

We think it clear from other authorities, some of
which are cited above, that at least one purpose of
punitive damages is to deter others than the defend-
ant: they are "exemplary damages." Nevertheless, if
the defendant, at the time of the wrongful act, was
incapable of exercising sufficient judgment to render
his conduct deserving of punishment, there would be
no deterrent value to an award of punitive damages:
neither the defendant nor anyone similarly situated
would be susceptible to deterrence.

In this case, the trial judge instructed the jury:

> "You are further advised that in order to establish
> his claim of fraud, the plaintiff must by clear and
> convincing evidence establish that Birch knew or

[61]

should have known that statements allegedly made by him were false. In this regard, you are instructed that Birch's mental incompetency, if you believe he was not competent at the time of the transaction with Schumann, is not a defense to the claim of fraudulent misrepresentation or deceit or negligent professional conduct. You may consider the mental state of Birch in determining whether or not Birch acted maliciously or willfully as relates to the question of punitive damages."

The defendant objected as follows:

"* * * We except to the Court's instruction to the jury that mental illness and defect is not a defense to the fraud count or to the negligence count."

In light of what we have said, it was error to instruct the jury that it could not consider evidence of Birch's mental competency in determining whether he possessed the requisite intent to have committed fraud. However, given defendant's position throughout the trial that Birch's mental illness was an absolute defense as a matter of law to both counts, his objection to the instruction must be read in that light. The objection, then, was not sufficient to inform the trial judge of the error, and no error is assigned to the failure of the court to give a proper requested instruction.

Defendant did, however, request the following jury instruction in the event the issue of punitive damages was submitted to the jury:

"In determining whether plaintiff is entitled to recover punitive damages from the defendant, you may consider testimony regarding the mental capacity of the protected person. If you find that the protected person committed the acts alleged while suffering from a mental illness and by reason thereof was not capable of exercising sufficient judgment to render his conduct culpable, or deserving of punishment then you may not award punitive damages."

The requested instruction is an accurate statement of the law as we have determined it to be, and should

have been, but was not, given. The trial court's abbreviated instruction was not complete, and even though the question of Birch's mental illness was argued fully and extensively to the jury, we cannot say that the jury understood that it could not award punitive damages if it concluded Birch's mental illness resulted in the deficiencies set forth in the requested instruction. The error, therefore, was prejudicial, and requires reversal. On retrial, the error with respect to the instructions relating to the jury's considering Birch's mental illness as a defense to the fraud count may be corrected.

In addition to defendant's principal arguments, discussed above, he also makes a number of other contentions. First, he argues that punitive damages cannot be awarded against a conservatorship, and that such damages cannot be awarded when no claim for them has been made pursuant to ORS 126.353. The substance of both of these arguments was rejected by the Supreme Court in *Kirkpatrick v. U. S. National Bank, supra.*

Defendant next contends that the trial court erred in instructing the jury that it could find fraud if "Birch knew *or should have known* that statements allegedly made by him were false." The contention is correct because plaintiff had amended his complaint at trial to plead only that Birch had actual knowledge of the falsity of his statements and to delete the additional allegation that Birch should have known the statements were false. However, elsewhere in its instructions, the trial court informed the jury:

"* * * I have withdrawn from your consideration, or have withdrawn from the pleadings the allegation that not only—the allegation that the representations made by the defendant in the case—or the nominal defendant, Mr. Birch—were reckless and that he made them without knowledge of their truth or falsity. That issue has been withdrawn. What remains is the allegation that Mr. Birch knew they

[63]

were false at the time that he made the representations."

On retrial it is unlikely that this problem, if it is one, will recur.

Defendant next contends that the transaction between plaintiff and Birch provided for plaintiff to receive a $1,000 "finder's fee" for a one-month loan of $12,000, that the transaction was therefore usurious under ORS chapter 82, and that plaintiff consequently suffered no damage because ORS 82.120(5) requires that the usurious loan be forfeited to the county school fund. The trial court ruled correctly that usury was not a defense in this case. The action here was for negligence and fraud, and was not upon the contract which purportedly provided for payment to plaintiff of the $1,000 finder's fee. *Burkitt v. Vail*, 106 Or 41, 210 P2d 861 (1922). The compensatory relief plaintiff sought was to recover the $12,000 paid over to Birch, but did not include the finder's fee. Moreover, assuming *arguendo* that Birch has standing to raise the usury question, all of the details of the transaction were formulated by Birch, who was plaintiff's attorney, and it is apparent that the "finder's fee" offered by Birch was a part of the fraudulent inducement by which he persuaded plaintiff to put up the $12,000. Defendant seeks to interpose Birch's fraud as a defense.

The remaining assignment of error which requires discussion is defendant's contention that plaintiff should not have been permitted to inquire about bar disciplinary proceedings against Birch or about Birch's current bar status. Defendant argues that this inquiry was irrelevant and inflammatory. We agree that the inquiry was irrelevant and ought not be permitted on retrial, even though there was no prejudice because the answer was that Birch has been suspended from active membership in the Oregon State Bar for nonpayment of dues and was then on the inactive list. The answer reflected on neither Birch's honesty nor his prior conduct. If anything, the evidence might provoke sympathy for Birch.

We reverse and remand the case to the trial court. However, on remand the plaintiff should be given the option of accepting the judgment on the negligence count or a new trial, and if he elects to accept that judgment ($12,000), that portion of the existing judgment based on fraud and punitive damages shall be vacated. If not, the case must be retried on all counts.

Reversed and remanded with instructions.

**SCHWAB, C. J.,** specially concurring.

I agree with the majority opinion except for that portion which states that mental illness can be a defense to a claim for compensatory damages for injury resulting from fraud, although not to a claim for compensatory damages for injury resulting from negligence. Negligence presupposes an unlawful state of mind. The rationale of Restatement (Second) of Torts, § 283B (1965), with regard to liability for negligence applies with equal force to liability for fraud:

" * * * * *

"3. The feeling that if mental defectives are to live in the world they should pay for the damage they do, and that it is better that their wealth, if any, should be used to compensate innocent victims than that it should remain in their hands."

" * * * * * ."

Why should it make a difference if a mental defective injures an innocent victim by driving an automobile without brakes rather than by misrepresenting to an innocent victim the condition of an automobile's brakes?

Punishment, not compensation, is the primary basis of punitive damages, and as to such damages I agree with the reasoning of the majority.