**Fernando PAVON, Plaintiff–Appellee,**

**v.**

**SWIFT TRANSPORTATION CO., INC., an Arizona corporation, Defendant–Appellant.**

**No. 98–35119.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1999.

Decided Sept. 20, 1999.

---

Craig A. Crispin, Crispin and Associates, Portland, Oregon, for the plaintiff-appellee.

Edward S. McGlone III, Wallace & Klor, Portland, Oregon, for the defendant-appellant.

Before: FLETCHER, FERGUSON, and TASHIMA, Circuit Judges.

FLETCHER, Circuit Judge:

Swift Transportation Company, Inc., ("Swift") appeals the district court's judgment, following a jury trial, in favor of Fernando Pavon in Pavon's wrongful discharge action, pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e), and O.R.S. 659.030, arising when Pavon was terminated after complaining about ongoing racial harassment in his job as a diesel mechanic at Swift. Swift also appeals the district court's denial of its motion for a new trial. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Pavon was hired by Swift in November, 1994. Pavon is a United States citizen of Hispanic origin, born in Honduras. While working at his post in February, 1995, Pavon was subjected to racial slurs and harassment by his co-worker, Kevin Sterle. Sterle's harassment of Pavon included calling him "beaner," "fucking Mexican," "wet back," "spic," "illiterate," and "stupid." Sterle also taunted Pavon with comments like "go home," and "go back to Columbia," and threatening to turn him in to immigration.

Pavon complained several times to his shop foreman and supervisor, Ted Staley, about Sterle's remarks. Staley reported Pavon's complaints to his superior, Mark Janszen. The harassment continued on a near-daily basis. Pavon complained directly to Janszen, who issued Pavon a disciplinary warning. After meeting with Pavon and Sterle, Janszen decided to transfer Pavon to a separate workstation, the Fuel Shop. The transfer was not accompanied by a loss of pay or benefits, but Pavon saw it as a demotion and disciplinary action, because the Fuel Shop was a station to which new and inexperienced employees were normally assigned.

After Pavon's transfer, Sterle continued to search out Pavon and to taunt him with

racial slurs. Plaintiff again complained to his supervisors. Janszen prepared disciplinary notices relating to Pavon. Larry Sampson, a colleague of Pavon's at Swift, advised Pavon to contact the company recruiter, Don Diggins, and Ron Rodriguez at company headquarters in Phoenix. Pavon could not reach Diggins, but did contact Rodriguez. Pavon followed the latter's advice to start keeping a notebook of what was going on. Despite having been told of Pavon's complaints by Sampson, Diggins took no action to interview Pavon or to investigate the allegations.

On July 5, 1995, Pavon was called into a meeting with Janszen and Diggins. Pavon continued to object to the company's discipline of him and its refusal to remedy the ongoing racial harassment. Diggins asked Pavon, "Do you know who Martin Luther King was? Remember what happened to him?" Pavon returned to work after the meeting. Later that day, he was terminated.

Following his termination, Pavon lost $1,218 in wages in a two week period before he secured comparable employment. On September 18, 1995, Pavon filed a complaint in Multnomah County District Court seeking unpaid wages. That action was dismissed following settlement by the parties. On October 2, 1995, Pavon filed this action in federal district court under Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 1981, and O.R.S. 659.030, as well as for common law wrongful discharge. Defendant's motion for summary judgment, based on the ground that the action was claim-precluded because it involved issues that could have been raised in the state court action, was denied. Following a three-day jury trial, judgment was entered in favor of Pavon. As total economic damages for all four of his claims, he was awarded $1,218. In addition, on his § 1981, Title VII, and wrongful discharge claims, he was awarded $250,000 in noneconomic damages and $300,000 in punitive damages. The Special Verdict form did not specify separate amounts for each claim. Defendant's motion for a new trial was denied, and Swift appealed.

## DISCUSSION

### Claim Preclusion

■ Swift's first argument is that all of Pavon's employment-related claims form a single transaction for purposes of claim preclusion. We review res judicata-claim preclusion-claims de novo. *See First Nat'l Bank v. Russell (In re Russell )*, 76 F.3d 242, 244 (9th Cir.1996); *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir.1994). Because the underlying judgment was rendered in an Oregon state court, we must apply Oregon's rules of claim preclusion. 28 U.S.C. § 1738; *Russell,* 76 F.3d at 244.

■ As a threshold matter, we decide whether to review this claim which was not raised interlocutorily. While this court will often decline to engage in the "pointless academic exercise" of reviewing a denial of summary judgment after a trial on the merits, *Lum v. City and County of Honolulu,* 963 F.2d 1167, 1169–70 (9th Cir. 1992), such a case is not presented here, because the question of claim preclusion was not a disputed factual issue that went to the jury, but was a ruling by the district court on an issue of law. *See, e.g., id.* at 1170 n. 1 ("We adhere to the majority view that in the ordinary case where a motion for summary judgment has been denied *because the trial court determined that issues of fact had to be tried,* there is no useful purpose in reviewing the pretrial ruling on summary judgment after a plenary trial on the merits.") (emphasis added).

■ Upon review of Oregon law, we find that Pavon's federal suit was not barred by his state wage penalty action. Oregon law focuses on the transaction at issue in the state and federal cases and gives preclusive effect to all claims against the defendant that were available to the plaintiff arising from that transaction. *Lee v. Mitchell,* 152 Or.App. 159, 953 P.2d 414

(1998). "The expression 'transaction, or series of connected transactions,' is not capable of a mathematically precise definition; it invokes a pragmatic standard to be applied with attention to the facts of the cases." *Troutman v. Erlandson,* 287 Or. 187, 598 P.2d 1211 (1979) (en banc), *quoting Restatement (Second) of the Law of Judgments,* § 61, Comment B (1978). The court in *Troutman* listed the following criteria as relevant to the transaction inquiry: time, space, origin of the harm, subjective or objective motivation, convenience, and similar acts. We agree with the district court that there is not enough similarity of facts or claims underlying the federal and state claims for claim preclusion to apply. As the district court explained, Pavon's state court action was a wage penalty claim which required proof of unpaid wages and failure to pay within thirty days, and a payroll penalty claim involving the absence of authorization for a payroll deduction. His federal court action, in contrast, involves proof of an allegedly hostile work environment, plaintiff's complaints to management, defendant's alleged failure to take effective remedial action and retaliation against plaintiff for his complaints, defendant's termination of plaintiff, and the connection between the termination and plaintiff's membership in a protected class.

■ Showing discriminatory intent was an essential element of the federal claims, but not of the state claims. Pavon did need to show in his state court action that Swift's failure to pay him his final wages was "wilful" in order to recover. O.R.S. 652.150. However, under the statute, "wilful" means "merely that the thing done or omitted to be done was done or omitted intentionally." *Sabin v. Willamette–Western Corp.,* 276 Or. 1083, 1094, 557 P.2d 1344 (1976). Showing "wilfulness" in the

state proceedings required different witnesses, and different evidence than what was required to show discriminatory intent in federal court. While the events that gave rise to the federal claims were connected to those that gave rise to the wage claims, we find that aspects of the state and federal claims did not *"necessarily overlap any complete litigation of another," Whitaker v. Bank of Newport,* 313 Or. 450, 458, 836 P.2d 695 (1992) (emphasis added), and that therefore, under Oregon law, Swift's defense of claim preclusion would fail.[1]

*Jury Instructions*

■ Swift next challenges the trial court's jury instructions on the reasonableness of the employer's conduct and on hostile work environment. We decline to review the former as it was not properly preserved below, and we reject the latter. The district court's formulation of civil jury instructions is reviewed for an abuse of discretion. *Scott v. Ross,* 140 F.3d 1275, 1280 (9th Cir.1998). Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading. *Mockler v. Multnomah County,* 140 F.3d 808, 812 (9th Cir.1998). When the claim is that the trial court misstated the elements that must be proved at trial, the reviewing court must view the issue as one of law and review the instruction de novo. *Mockler,* 140 F.3d at 812; *Masson v. New Yorker Magazine, Inc.,* 85 F.3d 1394, 1397 (9th Cir.1996).

■ Far from preserving any objection to the jury instruction on reasonableness at trial, Swift actually told the court that its instruction was probably correct under Ninth Circuit law. Swift failed to tell the court that it had made an error. Although

1. Because we conclude that claim preclusion does not apply, we do not reach Pavon's further contention that claim preclusion should not apply because he had not yet received a right-to-sue letter on his Title VII claim at the time he filed his state wage penalty action.

This remains an open question in our circuit, although other circuits have ruled adversely on such claims. *See Churchill v. Star Enter.,* 183 F.3d 184, 192–94 (3d Cir. 1999) (collecting cases).

Swift proposed its preferred alternative instruction, this was insufficient, under Fed.R.Civ.P. 51. *See Benigni v. City of Hemet,* 879 F.2d 473 (9th Cir.1988) (finding that the purpose of Rule 51 is to give the trial court an opportunity to correct potential error and that a proposed alternative instruction is insufficient to give that opportunity).

■■■ The objection to the jury instruction on Pavon's hostile work environment claim was preserved, but we find the instruction to be adequate. An employer is liable under Title VII for conduct giving rise to a hostile environment where the employee proves (1) that he was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Swift alleges that the trial court erred by instructing the jury that the conduct complained of had to be "pervasive and regular" instead of "sufficiently severe or pervasive to alter conditions of employment."

While the court did not use the precise formulation Swift asked for, the instructions it did give amounted to the same thing. The jury had to find that the conduct at issue was "unwelcome, pervasive and regular" and involved "discriminatory intimidation, ridicule, insult," and "detrimentally affected" plaintiff, which would suggest that it was "severe" and so by definition altered the conditions of employment. Other circuits have agreed. *See, e.g., Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1081 (3d Cir.1996) (upholding instruction identical to that given in this case); *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1049 n. 9 (5th Cir.1996) (instruction that discriminatory verbal intimidation, ridicule and insults " 'may be sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment that violates Title VII' " upheld) (internal citation omitted).

*§ 1981 Claim*

■■■ We also reject Swift's contention that Pavon was subjected to discrimination based on his national origin and not his race, and so may not bring a claim under § 1981 which provides relief only for race-based discrimination. *See St. Francis College v. Al–Khazraji,* 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (holding that Congress intended for this statute to protect "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."). The district court's ruling concerning the availability of relief under 42 U.S.C. § 1981 is a legal question which this court reviews de novo. *Tierney v. Kupers,* 128 F.3d 1310, 1311 (9th Cir.1997).

■■■ To establish a claim under § 1981 the plaintiff must prove that he or she was subjected to intentional discrimination based upon his or her race, rather than solely on the basis of the place or nation of their origin or their religion. *See St. Francis College,* 481 U.S. at 613, 107 S.Ct. 2022. The record in this case shows that Sterle considered Pavon to be of a different race than himself and chose to harass Pavon based on his ancestry and ethnic characteristics. The discrimination to which Pavon was subject was on account of his being Hispanic and the court did not err by entering judgment for Pavon on this claim.

*Wrongful Discharge*

■■■ Swift next asks this court to find that Pavon may not bring a claim in federal court for wrongful discharge under Oregon common law because the remedies available to him under the 1991 amendments to Title VII are sufficient. Under Oregon law, a plaintiff may bring a common law wrongful discharge claim when terminated as a result of his or her pursuit

of a job-related right. *Delaney v. Taco Time Int'l, Inc.,* 297 Or. 10, 681 P.2d 114 (1984). However, this common law remedy is only available where there is an absence of an adequate statutory remedy which protects the interests of society. *Anderson v. Evergreen Int'l Airlines, Inc.,* 131 Or.App. 726, 886 P.2d 1068 (1994). We need not reach this issue. Pavon was entitled to bring his § 1981 claim, and the damages awarded are fully supported by the § 1981 claim.

*Punitive Damages*

█ Swift also seeks to reduce or eliminate the punitive damage award. It asks the panel to conclude as a matter of law that the punitive damage award is excessive. We agree with the trial court's finding that the evidence was sufficient to · support the damages awarded and that the award is not excessive. "In reviewing an award of punitive damages, the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered. The court of appeals should then review the district court's determination under an abuse-of-discretion standard." *Browning–Ferris Indus. v. Kelco Disposal, Inc.,* 492 U.S. 257, 279, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989); *see also Kennedy v. Los Angeles Police Dep't,* 901 F.2d 702, 707 n. 3 (9th Cir.1989) (holding that the jury had considerable discretion to award punitive damages, and its award will not be lightly disturbed).

█ Under Title VII, a plaintiff is entitled to punitive damages if he or she "demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). This court recently held in a Title VII discriminatory discharge case that "to be entitled to an award of punitive damages, the plaintiff must demonstrate

that the defendant 'almost certainly knew that what he was doing was wrongful and subject to punishment.'" *Ngo v. Reno Hilton Resort Corp.,* · 140 F.3d 1299, 1304 (9th Cir.1998) (internal citations omitted). However, even if a plaintiff is awarded damages after having shown a violation of Title VII, and, as in this case, of § 1981 and state law against wrongful discharge, the Supreme Court has held that that award may be reduced if it is so high that it violates due process, as indicated by the three factors set out in *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). These factors are (1) the reprehensibility of defendant's conduct; (2) the ratio between any compensatory award and the punitive award; and (3) a comparison of the damage award and any potential statutory penalty for the same act. *See id.* at 574–75, 116 S.Ct. 1589.

Pavon presented sufficient evidence that a reasonable jury could determine that Swift's conduct was reprehensible. The trial court found that the jury could have found that racial insults and slurs were a common occurrence on Swift's shop floor and that management was aware of this behavior and took no meaningful steps to stop it. The jury could have concluded that Swift did not believe Pavon's allegations and never seriously investigated the situation. Moreover, the jury could have found that Swift's refusal to investigate stemmed from its blame-the-victim mentality, wherein it wrongly perceived Pavon as the problem, labeled him a troublemaker and terminated him. The trial court did not abuse its discretion in finding that this behavior was reprehensible enough to support the punitive damages awarded.

█ Nor does the ratio of 250 to 1 between the punitive damage award and plaintiff's out-of-pocket loss support a reduction of the award. While courts do consider the relationship between the punitive award and out-of-pocket loss, a mere disparity between the two is not sufficient to violate due process. The focus of the

inquiry under *BMW* is whether the punitive damages bear a reasonable relationship to compensatory damages. In this case, that ratio was 6:5. This is not excessive. In *BMW*, the court noted that ratios of 4:1 and 10:1 would not be excessive, although 500:1 was excessive. *BMW*, 517 U.S. at 581–82, 116 S.Ct. 1589.

■ Swift's suggestion that because the Oregon civil rights statute does not permit punitive damages, no punitive damages are available for Pavon's common law wrongful discharge claim is also incorrect. Recovery of punitive damages has indeed been permitted in Oregon common law cases. *See, e.g., Noe v. Kaiser Foundation Hospitals*, 248 Or. 420, 435 P.2d 306 (1967) (finding that the use of punitive damages is proper "where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent").

The damages awarded in this case were not excessive. Swift had notice of all of Pavon's claims-those under Title VII, under § 1981, and under Oregon state law. When the jury found in plaintiff's favor on all of these claims and awarded him a reasonable sum, there was no due process violation. Moreover, the award here was well within the range of other jury verdicts in similar cases.

*Cap on Damage Award*

■ Finally, Swift argues that, having pursued his Title VII claims to a jury verdict, Pavon was barred from recovery under 42 U.S.C. § 1981 and his entire

damage award (compensatory and punitive) was subject to Title VII's $300,000 cap.[2] We disagree. The court's application of the damages cap under 42 U.S.C. § 1981a is a question of law subject to de novo review. *Tierney v. Kupers*, 128 F.3d 1310, 1311 (9th Cir.1997).

■ As the district court explained, "[t]o the extent that plaintiff's damages exceed $300,000, the excess can be attributed to claims other than those brought under Title VII." Moreover, Swift misreads the statute to argue that Pavon was entitled to remedies under only one, but not both federal statutes. Section 1981a does not force a plaintiff to choose between Title VII and § 1981 remedies.[3] "Rather it broadens the remedies available to successful Title VII litigants." *Washington v. Garrett*, 10 F.3d 1421, 1434 (9th Cir.1993). Pavon could and did recover damages under § 1981–and is therefore not a "complaining party [who] cannot recover under ... 42 U.S.C. § 1981"-and so he "may recover compensatory and punitive damages as allowed in subsection (b) in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964. . . ." 42 U.S.C. § 1981a(a)(1).

Swift also argues that plaintiff's total damages, on *all* of his claims, state and federal, are subject to a $300,000 cap. To permit otherwise, Swift argues, would be to allow plaintiffs to avoid the limitation on damages in civil rights cases that Congress intended when it enacted the caps. Swift cites no support for this proposition, and

---

**2.** The relevant provision of Title VII limits the total amount of compensatory and punitive damages a party can receive according to the size of the employer. *See* 42 U.S.C. § 1981(b)(3). There is no statutory cap on damage awards available for § 1981 claims. The Oregon civil rights statute provides for equitable relief only, so Pavon was not entitled to punitive damages on his state discrimination claim. *See* ORS 659.121(1).

**3.** That section provides:
 Civil rights. In an action brought by a complaining party under section 706 or 707 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–5 [or 2000e–16] against a respon-

dent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. § 2000e–2 or 2000e–3 [or 2000e–16], and provided that the complaining party cannot recover under ... 42 U.S.C. § 1981, the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.
 42 U.S.C. § 1981a(a)(1).

the language of the 1991 Civil Rights Act suggests that the opposite is true. Congress knew when it enacted the amendment that many state anti-discrimination statutes provided for damages as did existing federal civil rights statutes, other than Title VII, and it designed its scheme to coexist with those. *See, e.g.*, 42 U.S.C. § 2000e–7 ("Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State. . . ." ).

AFFIRMED.