Argued May 5, reversed July 11, 1977

DENSON et ux, *Respondents,*
*v.*
RON TONKIN GRAN TURISMO, INC.,
*Appellant.*
(TC 418-823, SC 24580)

566 P2d 1177

Barbee B. Lyon, Portland, argued the cause for appellant. With him on the briefs was John E. Frohnmayer, of Tonkon, Torp & Galen, Portland.

Douglas M. Fellows, of Hedricks, Fellows, McCarthy & Zikes, P.C., Portland, argued the cause and filed a brief for respondents.

LENT, J.

**LENT, J.**

Defendant Ron Tonkin appeals from a judgment entered after a jury verdict. The jury found that defendant violated the Unlawful Trade Practices Act, ORS 646.605 et seq. Statutory damages of $200.00, pursuant to ORS 646.638(1), and punitive damages of $5,000.00, together with attorney fees, were awarded to the plaintiffs. Defendant asserts in its appeal that it was error to submit the issues to the jury because its conduct is not proscribed by the Act. It further complains of the award of attorney fees and punitive damages as well as the manner in which the jury was instructed.

In October of 1974, plaintiffs brought a 1971 Alfa Romeo automobile to defendant's shop for repair of a noise in the rear end. During a test drive made for diagnosis, further mechanical difficulties developed. The engine suddenly lost power and began to run on three cylinders. Upon return to the shop, a hole in the top of one of the pistons was discovered.

Plaintiffs were distressed when told of the damage and that the repairs would be costly.[1] To partially relieve these anxieties, defendant's service manager, Mr. Lukich, agreed to overhaul the engine for $410.00, representing that the normal price for such repairs would be $550.00 to $600.00. The jury could have found that, although he denied it, Lukich promised to do a "valve job," that is, to grind the valves, for this price in addition to replacing the pistons and barrels as part of the overhaul. Lukich wrote "pistons, barrels—valves" on the work order to the mechanic.

Because of the need to import parts from Italy, the engine was not repaired for a month. Plaintiffs were presented with the mechanic's work order, which described the services as "pistons, barrels—valves" and which tallied the amount owed for the repairs at

---

[1] Plaintiffs do not contend that the piston damage was due to any fault of defendant's agents.

$471.79. They paid the charge but complained about the deviation from the earlier quotation.

Immediate problems with the engine developed. There was some difficulty in starting the engine. The motor ran rough when idling. Mr. Denson testified that he found old grease and dirt between the block and cylinder head, leading him to conclude that the engine had not been dismantled. Shortly after returning home, Mr. Denson performed a compression test, which revealed that the third cylinder was "way, way low."

Plaintiffs returned to the repair shop about a month later with a representative of the Consumer Protective Division. At this meeting with Lukich, it was represented that the valves had been ground. Plaintiffs were, however, largely concerned that no work had been done at all.

Plaintiffs in their amended complaint framed the controversy as follows:

"IV

"On or about November 8, 1974, defendant delivered back to plaintiffs their vehicle. During the course of this transaction defendant willfully used the following unfair trade practices:

"1. Represented to plaintiffs that the valves on the interior of the engine had been reconditioned when, in fact, nothing had been done to them.

"2. Represented to plaintiffs that the repairs on plaintiffs' vehicle would be done for the reduced amount of $410.00, when, in fact, plaintiffs were charged $471.79."

It is plaintiffs' theory that the representation as to the valves was an unlawful trade practice under ORS 646.608(1)(g). The price representation is alleged to have been illegal under ORS 646.608(1)(j). The jury was instructed accordingly. These sections provide that:

"646.608(1). A person engages in a practice hereby

[ 88 ]

declared to be unlawful when in the course of his business, vocation or occupation he:

"* * * * *

"(g) Represents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if they are of another;

"* * * * *

"(j) Makes false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions;

"* * * * *"

ORS 646.608(2) establishes that:

"A representation under subsection (1) of this section may be any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact."[2]

■ During trial, plaintiffs offered proof from which the jury could conclude that no work was done on the valves. It was established that the pistons and barrels were replaced. In light of the jury verdict we need not review defendant's evidence disputing plaintiffs' contentions because evidence existed to prove the allegations of the complaint.[3]

---

[2]The Unlawful Trade Practices Act allows both public and private enforcement of its guarantees. The Attorney General or county district attorneys may bring "investigative demands" to determine if a violation has occurred under ORS 646.618. They may also bring suit to enjoin violations under ORS 646.632. Private remedies are granted by ORS 646.638(1):

"Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the wilful use or employment by another person of a method, act or practice declared unlawful by ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or $200, whichever is greater. The court or the jury, as the case may be, may award punitive damages and the court may provide such equitable relief as it deems necessary or proper."

ORS 646.638(3) allows the court to award attorney fees in addition to the relief outlined in ORS 646.638(1). "Wilful" is defined in ORS 646.605(8) as: "A wilful violation occurs when the person committing the violation knew or should have known that his conduct was a violation."

[3]Our scope of review of factual issues decided by a trier of fact in an action at law is limited. Any decision of fact cannot be controverted on appeal unless we can say that there is no evidence to support the conclusion. Oregon Constitution, Amended Art VII, § 3; ORS 19.125(1).

■ Defendant in its third assignment of error contends that the court erred in refusing to grant a nonsuit as to the value misrepresentation because "there is no evidence of representations that were made that would be actionable under the Unfair (sic) Trade Practices Statute at the time the car was delivered back to them." We conclude that a representation was made, but that it is not actionable under ORS 646.608(1)(g).[4]

■ After the repairs and before payment, defendant billed the plaintiffs for parts and services to the "pistons, barrels—valves." In light of the prior promise to grind the valves, such a billing is a "manifestation of [the prior] assertion by words or conduct" and thus a representation under ORS 646.608(2), *supra.* Even

[4]The language of ORS 646.608(1)(a)-(j) (part of the list of practices declared unlawful) is largely borrowed from the Uniform Deceptive Trade Practices Act. *See* 7 ULA 333 et seq., § 2. The Uniform Act isolates as illegal specific actions of trade symbol or dress infringement, deceptive advertising and false disparagement. Its emphasis is largely in identifying business conduct which is in unfair competition with other businesses. *See* Dole, *The Uniform Deceptive Trade Practices Act: Another Step Toward a National Law of Unfair Trade Practices,* 51 Minn L Rev 1005 (1967). *See also Young v. Joyce,* 351 A2d 857 (Del Supr 1975), and *Mars, Inc. v. Curtiss Candy Co.,* 8 Ill App3d 338, 290 NE2d 701 (1972).

On the other hand, the legislative history of the Oregon Unlawful Trade Practices Act supports the view that it is to be interpreted liberally as a protection to consumers. House Bill 3037, the final version of the legislation, combined several bills introduced for consumer protection. Senate Bill 50 (one of the consumer protection bills introduced in the 1971 legislative session) contained much of the language eventually enacted as ORS 646.608(1) (a)-(j). As originally drafted, the bill described the proscribed trade practices as "unfair methods of competition." However, this language was deleted from the final version. The minutes of the Senate Consumer Affairs Committee for February 17, 1971, read:

"Senator Willner then proceeded to explain his amendments to the committee, giving the rationale behind the amendments as he progressed.

"In section 3, he pointed out, the language 'unfair methods of competition' had been deleted, since the bill seeks to protect consumers rather than businesses."

House Bill 3037 contained other "consumer protection" measures (abolition of holder in due course doctrine for consumer transactions; anti-deficiency judgment statute; regulation of home solicitation sales). *See* Or Laws, ch 744 (1971). Because the policy underpinnings of our statute (protection of consumers) differ somewhat from the Uniform Act (protection of businesses), interpretations of the Uniform Act are of limited value in discerning the legislative intent behind the Oregon Act.

absent the billing, failure to disclose that no work had been performed on the valves amounts to a representation according to the same definition.

■ Defendant did not, however, represent that its services were "of a particular standard, quality or grade * * * if they are of another" under ORS 646.608(1)(g). An assertion that particular services were done says nothing of the manner in which they were performed. To be actionable under this clause, the representation must be referential; that is, it must compare the real estate, goods or services to an objective and independent standard. No such comparison was made here.[5]

■■ Under the same logic, the representation that the valves had been ground, which was made after payment, is not actionable under ORS 646.608(1)(g). Additionally, absent further detrimental reliance, plaintiff did not at that point suffer any ascertainable loss under ORS 646.638(1). Ascertainable loss is necessary under the statute to bring an individual action to recover damages. *Scott v. Western Int. Sales, Inc.,* 267 Or 512, 517 P2d 661 (1973).

■■ We conclude, also, that defendant's conduct regarding the price quotation is not in violation of ORS 646.608(1)(j) as a "false or misleading representation of fact concerning the * * * amounts of price reductions." Plaintiffs do not contend that the normal price for such repairs was misrepresented. They complain only of the representation of the amount to be charged. But a statement that a particular sum will be charged is generally not a representation of fact but only a promise.[6] This subsection is the only one of 18 types of

---

[5] *Compare, Wolverton v. Stanwood,* 278 Or 341, 563 P2d 1203 (1977); *Scott v. Western Int. Sales, Inc.,* 267 Or 512, 517 P2d 661 (1973).

[6] In ORS 646.608(1) only one type of promissory fraud is explicitly listed as an unlawful trade practice. ORS 646.608(1)(q) declares it to be an unlawful trade practice where one "promises to deliver real estate, goods, or services within a certain period of time with intent not to deliver them as promised."

deceptive trade practices outlined in the Act which explicitly requires "representations of fact." We construe its language to address representations of presently existing facts, that is, the normal or regular price.

It is significant that the Attorney General has issued rules describing types of permissible reference price advertising which comply with this subsection. O.A.R. 137-20-010. These rules declare unlawful certain representations as to the reference price and not the offering price.

The evil proscribed by this subsection is the misrepresentation of facts concerning the normal or regular price of goods, services, or real estate; and no false or misleading representation of this type is alleged here. Misrepresentations of offering prices are not explicitly prohibited by any subsection of ORS 646.608(1). It would be strange if such conduct became illegal under the Act only when coupled with a true representation of the normal price.

We do not condone defendant's conduct in this case. But its actions do not fit within the definitions of ORS 646.608(1)(g) and 646.608(1)(j). We need not review defendant's remaining assignments of error.

Reversed.