Argued and submitted January 21, affirmed in part; reversed in part
and remanded April 6, reconsideration denied May 14,
petition for review denied June 23, 1981 (291 Or 151)

ABRAMS,
*Appellant - Cross-Respondent,*

*v.*

MIKE SALTA PONTIAC, INC.,
*Respondent - Cross-Appellant.*

(No. A7901-00098, CA 17039)

625 P2d 1383

James A. Cox and Richard J. Geisert, Lake Oswego, filed the briefs and waived argument for appellant - cross-respondent.

Kevin D. Padrick, Portland, argued the cause for respondent. With him on the briefs were Peter C. Richter and Miller, Nash, Yerke, Wiener & Hager, Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P.J.

## RICHARDSON, P.J.

Plaintiff, a customer of defendant, brought this action alleging in separate counts that defendant breached its contract with plaintiff and violated the Unlawful Trade Practices Act (ORS 646.605 *et seq.)* in its dealings with plaintiff.[1] The jury's special verdict awarded plaintiff compensatory damages on both counts and punitive damages on the Unlawful Trade Practices count. Pursuant to defendant's motion for judgment notwithstanding the verdict, the trial court struck the award of punitive damages. Plaintiff appeals, contending that the trial court erred by so doing. We agree and reverse the granting of the judgment n.o.v. Defendant cross-appeals, contending that the court erred in its instructions on the measure of contract damages, and by denying defendant's motion for directed verdict on the trade practices count. We affirm the parts of the judgment challenged by the cross-appeal.

In May, 1978, plaintiff brought his 1972 Pontiac Gran Prix to defendant to have a new engine installed. After being informed that complete new engines were not available, plaintiff asked defendant's employee to install a new short block, and specifically stated that he did not want a rebuilt short block. The employee prepared a written order for the installation of a new short block. A rebuilt one was installed, apparently without the knowledge of the employee whom plaintiff first contacted and who had prepared the work order. On approximately June 15, 1978, the work on the car was completed and plaintiff's wife went to defendant's place of business to pick it up. There was no evidence that, as of that time, any employee of defendant

---

[1] ORS 646.608(1) provides as relevant:

"(1) A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person:

"* * * * *

"(f) Represents that real estate or goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or second-hand;

"* * * * *

"(t) Concurrent with tender or delivery of any real estate, goods or services fails to disclose any known material defect or material nonconformity * * *

"* * * * *"

was aware of the discrepancy between the merchandise requested and that provided, other than the fact the work order specified a new short block and the employees doing the work installed a rebuilt block.

Plaintiff encountered immediate and continuing problems with the car, principally overheating. Plaintiff and his wife brought the car to defendant and to other service businesses on several occasions between the middle of June and late July, seeking to have the problems remedied. At no time during that period were plaintiff or his wife informed by defendant that a rebuilt rather than a new block had been installed. Plaintiffs were charged and paid for the services directed at curing the overheating and other problems.

■ Defendant contends that no single employee was aware at any relevant time that a new block had been ordered and a rebuilt one installed. There was evidence, however, from which the jury could have found otherwise. Defendant's service manager testified that he

"* * * came in contact with the problem with the car after [he] came back from a vacation on the East Coast, which was the second week of July of 1978."

He testified that he participated in the work on the car and that he reviewed the original written order, which showed that a new short block had been ordered. He then testified on direct examination:

"Q. Does [the order] reflect what kind of a short block was installed in that automobile?

"A. It has one here — it looks like a part number 1 — I can't make out the digit. But D10-2 block, and below it, it has a core charge.

"Q. What does that tell you about the type of block installed in that car?

"A. Myself as being in the business, I would know that it was a rebuilt short block."

Plaintiff was last charged for services by defendant on July 25, 1978. The service manager's testimony would support a finding that he was aware before that time of the discrepancy between the goods ordered and the goods provided by defendant.

■ We first consider defendant's cross-appeal. Defendant contends, first, that the trial court erred in instructing the jury that plaintiff's damages for breach of contract were to be measured by replacement cost rather than diminution in value. We disagree. *See Beik v. American Plaza Co.,* 280 Or 547, 555-57, 572 P2d 305 (1977).[2]

■ Defendant's remaining contention on its cross-appeal is that the court erred by denying defendant's motion for a directed verdict on the Unlawful Trade Practices count. Defendant argues that plaintiff's evidence failed to show a violation of ORS 646.608(1)(t) *(see* n 1, *supra)* because

"* * * plaintiff must show that defendant's employee delivering the vehicle to plaintiff's wife:

"1.   had *actual* knowledge that plaintiff wanted a newly manufactured block,

"2.   had *actual* knowledge that defendant had, in fact, installed a rebuilt short block, and

"3.   knew or should have known that, by not disclosing the defect or nonconformity to plaintiff's wife, his or her conduct was a violation of the act.

"The individual who delivered the vehicle to plaintiff's wife was the cashier. Plaintiff did not produce any evidence of the actual knowledge of the cashier, nor could any reasonable inferences be drawn that the cashier knew that plaintiff wanted a new short block but received a rebuilt short block. Further, there was no evidence presented to show that the cashier would have the time, experience or inclination to examine the repair orders and obtain the actual knowledge required." (Emphasis defendant's.)

Assuming *arguendo* that a violation of the statute requires that the requisite knowledge be possessed by a particular single employee of a corporate defendant, we disagree with defendant's premise that the cashier who received payment must be that employee and with the premise that, to be actionable, any failure to disclose had to occur at the time of the *original* delivery of the car after the rebuilt block was installed. Services continued to be provided by defendant after that time, and, as earlier indicated, there was evidence from which the jury could find

---

[2] Defendant does not argue in its cross-appeal that there was an error in the *amount* of compensatory damages awarded on the trade practices count.

that, prior to the *final* delivery after services were performed, defendant's service manager had the knowledge defendant argues had to be possessed by a particular employee in order for a violation of ORS 646.608(1)(t) to be established.

■      Defendant also argues that plaintiff failed to prove a violation of ORS 646.608(1)(f) *(see* n 1, *supra)* because there was no misrepresentation as to the new or reconditioned state of the goods concurrent with the original delivery of the goods in their reconditioned state, and any later misrepresentations did not result in ascertainable damage to plaintiff. Defendant relies on *Denson v. Ron Tonkin Gran Turismo, Inc.,* 279 Or 85, 566 P2d 1177 (1977). That reliance is misplaced. The Supreme Court held in *Denson,* in interpreting ORS 646.608(1)(g) and (1)(j), that

"[d]efendant did not, however, represent that its services were 'of a particular standard, quality or grade * * * if they are of another' under ORS 646.608(1)(g). An assertion that particular services were done says nothing of the manner in which they were performed. To be actionable under this clause, the representation must be referential; that is, it must compare the real estate, goods or services to an objective and independent standard. No such comparison was made here.

"Under the same logic, the representation that the valves had been ground, which was made after payment, is not actionable under ORS 646.608(1)(g). Additionally, absent further detrimental reliance, plaintiff did not at that point suffer any ascertainable loss under ORS 646.638(1). Ascertainable loss is necessary under the statute to bring an individual action to recover damages. *Scott v. Western Int. Sales, Inc.,* 267 Or 512, 517 P2d 661 (1973).

"We conclude, also, that defendant's conduct regarding the price quotation is not in violation of ORS 646.608(1)(j) as a 'false or misleading representation of fact concerning the * * * amounts of price reductions.' Plaintiffs do not contend that the normal price for such repairs was misrepresented. They complain only of the representation of the amount to be charged. But a statement that a particular sum will be charged is generally not a representation of fact but only a promise. * * *" (Footnotes omitted.) 279 Or at 91.

We find nothing in the quoted analysis of subsections (1)(g) and (1)(j) which supports defendant's argument that its conduct was not actionable under the two different

subsections of ORS 646.608 involved here. Moreover, here the jury could have found that there was ascertainable damage stemming from the misrepresentations made subsequent to the original delivery, *e.g.,* plaintiff's expenses in connection with the continuing repair efforts.[3] We find defendant's cross-appeal unmeritorious.

■        We turn to plaintiff's appeal. The trial judge granted defendant's motion for judgment n.o.v. as to the punitive damage award based on his conclusion that defendant's conduct was not sufficiently aggravated to warrant the award. The issue, however, is whether there was evidence from which the jury could find that defendant's conduct merited punitive damages under the applicable legal test, which we summarized in *Senn v. Bunick,* 40 Or App 33, 594 P2d 837, *rev den* 287 Or 149 (1979):

> "'* * * More succinctly, it has been stated that 'it is proper to use the sanction of punitive damages where there has been a particularly aggravated disregard' of the rights of others and 'where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent * * *.' *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 425, 435 P2d 306 (1967), 27 ALR3d 1268 (1969). The impact of punitive damages is supposed to be a 'civilizing influence.' *Douglas v. Humble Oil,* [251 Or 310, 445 P2d 590 (1968)] at 316.
>
> "It is not necessary for plaintiffs to show actual malice or ill will on the part of defendants. It is enough if the evidence is sufficient to permit the jury to conclude the defendant's conduct amounted to an intentional disregard of the plaintiffs' rights. At the heart of all the punitive damages cases is the idea that in some instances deliberate or careless conduct is so much in disregard of the rights of another that it should lay the actor open to monetary punishment that would tend to deter that sort of conduct in the future. * * *'" (Footnotes omitted.)[4] 40 Or App at 41.

There is no contention the jury was improperly instructed on the elements of punitive damages.

---

[3] *See* n 2, *supra.*

[4] In *Crooks v. Payless Drug Stores,* 285 Or 481, 592 P2d 196 (1979), the Supreme Court held that ORS 646.638, which permits punitive damages to be awarded in Unlawful Trade Practices Act cases, was intended to make such damages "awardable only when the common-law requirements for punitive damages are met." 285 Or at 490. The quoted language from *Senn v. Bunick, supra,* expresses the common law requirements.

■　　Defendant advances two general arguments in support of the court's striking of punitive damages: first, that no single employee of defendant's knew at any relevant time that the wrong kind of goods were provided, or, therefore, that a misrepresentation was made; and, second, that even if there had been such knowledge, the conduct in question was not sufficiently aggravated to warrant punitive damages.[5]

We reject defendant's first argument for the same reason we rejected the corresponding argument in its cross-appeal. Assuming without deciding that an award of punitive damages against a corporation is contingent on conduct by or knowledge of a particular employee, there was evidence here that a particular employee did have the requisite knowledge at a relevant time.

Defendant relies principally on *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 435 P2d 306, 27 ALR3d 1268 (1967), in support of its second argument. In *Noe,* the infant plaintiff's parents had instructed the defendant hospital that the child was not to be circumcised. A hospital resident surgeon, who had assisted in the child's delivery, performed a circumcision. Although the parents were informed by the hospital that the mistake had been made, the resident who performed the operation was less than candid with the child's father about the circumstances surrounding the performance of the procedure. In reversing the trial court's award of punitive damages, the Supreme Court stated:

"Inconsistencies, evasions and untruths made subsequent to the occasion have been considered by this court to

---

[5] Plaintiff argues that defendant was not entitled to move for judgment n.o.v. on these grounds, and cannot assert them here, because defendant did not move for a directed verdict based on the same grounds. At the time defendant moved for a directed verdict on other grounds, however, the court stated:

"I am going to deny that motion, Counsel. But I will say that the question of willful conduct in this case is a matter that I will give you leave to raise in the nature of a verdict or judgment, notwithstanding the verdict. I have some thoughts about the matter. I think it is a close question that I will rereview if you raise it later on."

Under these circumstances, defendant's moving for a directed verdict on the grounds it later urged in its motion for judgment n.o.v. would not have enabled the trial court to avoid error in the motion for directed verdict. We will therefore consider defendant's arguments.

be only evidence of an attempt to avoid responsibility for past actions rather than evidence of previous disregard for consequences. *O'Hara v. Pundt,* 210 Or 533, 550, 310 P2d 1110 (1957). The subsequent statements of the resident fall into this category." 248 Or at 426-27.

■ Defendant argues that the evidence here showed, at the most, no more than an after-the-fact avoidance of responsibility of the kind involved in *Noe.* We disagree. There was evidence from which the jury could find that an agent or agents of defendant were acting with a "previous disregard for consequences" in allowing plaintiff to incur continuing expense and in permitting plaintiff to be deprived of the enjoyment of his car while information about the car's condition was known to the agent or agents and not imparted to plaintiff. The award of punitive damages must be reinstated.

Affirmed in part; reversed in part and remanded with instructions to enter judgment in accordance with the verdict.