Submitted on record and briefs January 11, resubmitted in banc September 8, affirmed September 15, 1982

RAUDEBAUGH et al,
*Respondents,*
*v.*
ACTION PEST CONTROL, INC.,
*Appellant.*

(No. 16-79-07972, CA 19481)

650 P2d 1006

Stuart M. Brown, and Young, Horn, Cass & Scott, Eugene, filed the brief for appellant.

James A. Hendershott, and Hendershott & Hendershott, Eugene, filed the brief for respondents.

THORNTON, J.

Gillette, J., dissenting.

## THORNTON, J.

Defendant appeals from a judgment for plaintiffs in an action for negligence and violations of the Oregon Unlawful Trade Practices Act (UTPA).[1] ORS 646.010 -.180. The acts alleged consisted of falsely reporting and representing that plaintiffs' home-to-be was free from insect infestation and that there was no damage from fungus growth, rot or other wood-destroying organisms.

Defendant makes the following assignments of error:

(1) Failing to grant defendant's motion for dismissal; failing to direct a verdict for defendant; and failing to grant defendant's motion for judgment notwithstanding the verdict. The motions asserted that there was no evidence that defendant made the complained-of representation directly to plaintiffs, or that defendant made the representation to a third party with the intent that it be passed on to the plaintiffs; and that the evidence showed that the complained-of representation was not made to plaintiffs in the normal course of defendant's business.

(2) Failing to give defendant's requested supplemental jury instruction, which required that the jury find that the complained-of representation was made by defendant to plaintiffs in the normal course of defendant's business as a prerequisite to awarding damages to plaintiffs.

(3) Failing to give defendant's requested supplemental jury instruction, which required that the jury find that plaintiffs had a right to rely on the complained-of representation as a prerequisite to awarding damages to plaintiffs.

(4) Failing to give Uniform Jury Instruction 30.01 - the preliminary instruction on damages.

The essential facts are not disputed.

Plaintiffs entered into an agreement with a Mr. and Mrs. Baxley to purchase real property to be used by plaintiffs and their children as their home. The agreement

---

[1] Plaintiffs' negligence cause of action was dismissed at the close of plaintiffs' case. No appeal has been taken from that dismissal.

was contingent on plaintiffs' obtaining financing. As part of the agreement the Baxleys were to obtain a structural pest control inspection report, which was required for plaintiffs to obtain financing from the State Department of Veterans' Affairs. Plaintiffs could not obtain financing from any other sources.

Defendant was contacted by Mrs. Baxley to perform the inspection and make a report. Defendant knew that the inspection and its report were for the purpose of obtaining a loan from the Department of Veterans' Affairs and that such loans were often for financing for a new purchaser, but did not know of plaintiff's agreement to purchase.

Defendant made an inspection and reported the property free from all insect infestations and from damage to structural members from fungus growth, rot or other wood-destroying organisms and/or conditions conducive to damage. The property in fact had insect infestations and had sustained extensive damage to its structural members, some of which had been occurring over a 10- to 15-year period.

Defendant's agent, Jim Brick, was employed by defendant and acting within the scope of his employment at the time he inspected the premises and issued defendant's reports. Defendant's representation was made in two documents, one being a "Structural Pest Control Inspection Report" and the second a "Clearance Statement." Mrs. Ostrum, a realtor, picked up a copy of the reports to take to the Department of Veterans' Affairs, communicated the contents to plaintiffs, first by reading the "Clearance Statement" to Mrs. Raudebaugh over the phone and then by leaving a copy of the "Clearance Statement" with plaintiffs. The Department of Veterans' Affairs relied on defendant's "Clearance Statement", and the loan was approved. Plaintiffs alleged that in reliance on defendant's representations they had purchased the property and suffered damages thereby.

ORS 646.608 provides:

"(1) A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person:

" \* \* \* \* \*

"(e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that they do not have or that a person has sponsorship, approval, status, qualification, affiliation or connection that he does not have;

" \* \* \* \* \*

"(g) Represents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if they are of another;

" \* \* \* \* \* "

ORS 646.605(7) provides:

" 'Real estate, goods or services' means those which are or may be obtained primarily for personal, family or household purposes \* \* \*."

The requirements for private enforcement are set out in ORS 646.638(1).[2]

Defendant's first and primary assignment[3] is premised on the proposition that in order to recover under the UTPA plaintiffs must allege and prove that the alleged representation was made either directly by defendant to plaintiffs or to a third party with the intent that it be transmitted to plaintiffs. Defendant asserts that is an essential element in the traditional common law test for actionable fraud. In support of this argument, defendant points to the following facts: The complained-of representation was made by defendant at the request of the *sellers* and with the knowledge that it would be communicated to and utilized by the Department of Veterans' Affairs;

---

[2] ORS 646.638(1) provides:

"Any person who suffers any ascertainable loss of money or property, real or personal, as a result of wilful use or employment by another person of a method, act or practice declared unlawful by ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or $200, whichever is greater. The court or the jury, as the case may be, may award punitive damages and the court may provide such equitable relief as it deems necessary or proper."

[3] Defendant does not assert that services of this type do not come within the ambit of the Act.

defendant was unaware that the house was to be sold or that plaintiffs were potential purchasers; that the complained-of representations were communicated to plaintiffs by an agent of the seller without the knowledge of defendant; and that defendant had no pecuniary interest in the sale of the house.

Defendant argues that the above-mentioned pleading and proof requirement, requirements under the common law to prove fraud or negligent misrepresentation, apply also under UTPA. We disagree.

■ ■ The general policy of the UTPA is to discourage deceptive trade practices and to provide a viable remedy for consumers who are damaged by such conduct. *Wolverton v. Stanwood,* 278 Or 341, 563 P2d 1203, *reh den* 278 Or 709, 565 P2d 755 (1977). The Act defines the types of conduct that constitute unlawful trade practices, which are not the same as conduct which is the basis of common law fraud actions for damages. *See Wolverton v. Stanwood, supra.* The Act does not require that there be a loss to an individual consumer for there to be a violation. If there is ascertainable loss to a consumer, that consumer has a cause of action for general and punitive damages. ORS 646.638(1). The elements of the cause of action are specified in the statute, and the consumer may recover by alleging and proving that there was a wilful violation of the provisions of the Act and ascertainable damages as a result of the violation. There is no requirement that the representations which constitute a wilful violation of the Act be made to the injured consumer. Had the legislature intended that a consumer prove all the elements of common law fraud in order to recover damages, it would have been unnecessary to create a cause of action by statute. ORS 646.656 provides that the remedies specified in the Act are in addition to all other civil remedies existing at common law. This indicates legislative intent to create a special remedy different from those that exist at common law.

■ When the legislature enacted the UTPA, it specifically provided in ORS 646.608(1) and (2) the type of representations that are covered by the law.[4] We have no

---

[4] For a general discussion of the history and purpose of the UTPA *see* Mooney, *The Attorney General As Counsel for the Consumer: The Oregon Experience,* 54 Or Law Rev 117 (1975).

authority to add to those requirements by inserting requirements of the common law. In construing a statute, courts must ascertain and declare what is, in terms or in substance, contained therein and cannot insert what has been omitted or omit what has been inserted. ORS 174.010. *Union Pac. R. R. Co. v. Bean,* 167 Or 535, 119 P2d 575 (1941).

As our Supreme Court declared in *Wolverton:*

> "* * * The elements of common law fraud are distinct and separate from the elements of a cause of action under the Unlawful Trade Practices Act and a violation of the Act is much more easily shown. *See, e.g., Sherrod v. Holzshuh,* 274 Or 327, 546 P2d 470 (1976); *Scott v. Western Int. Sales, Inc.,* 267 Or 512, 517 P2d 661 (1973). * * *" 278 Or at 713

*Accord Searcy v. Bend Garage Company,* 286 Or 11, 592 P2d 558 (1979); *Abrams v. Mike Salta Pontiac,* 51 Or App 495, 625 P2d 1383, *rev den* 291 Or 151 (1981); *Bodin v. B & L Furniture,* 42 Or App 731, 601 P2d 848 (1979).

Defendant's second assignment raises the issue that the trial court erred in not instructing that the representation be made either directly to plaintiffs or to a third party with the intent that it be communicated to plaintiffs. This issue is in reality part of defendant's first and primary assignment: namely, that this court should engraft requirements of the common law on the UTPA. For reasons already explained, we decline to do so. The same is true as to defendant's third assignment.

■ Defendant's last assignment deals with the failure of the trial court to give Uniform Jury Instruction 30.01 - the preliminary instruction on damages. While the court could have given the requested instruction, its substance had already been included in the court's cautionary instructions. In view of that, failure to give this requested instruction was not reversible error.

Affirmed.

**GILLETTE, J.,** dissenting.

The issue presented by this case is a simple one: May a plaintiff take advantage of the private-right-of-action section of the Oregon Unlawful Trade Practices Act

(UTPA) without alleging and proving that the defendant committed an unlawful trade practice in the sale of real estate, goods or services *to the plaintiff?* From the majority's unequivocal affirmative answer to this question, I respectfully dissent.

The present UTPA derives from Oregon Laws 1971, chapter 744. *See Gross-Haentjens v. Tharp,* 38 Or App 313, 316, 589 P2d 1209; *see also* Mooney, *The Attorney General as Counsel for the Consumer: The Oregon Experience,* 54 Or L Rev 117 (1975). In its present form, the UTPA contains the following pertinent sections:

ORS 646.605(1) defines the "trade" or "commerce" that is the scope of the Act:

> "(1) 'Trade' and 'commerce' mean advertising, offering or distributing, whether by sale, rental or otherwise, any real estate, goods or services, and includes any trade or commerce directly or indirectly affecting the people of this state."

I understand this section to mean that the UTPA applies to consumer transactions, offered or completed. (Offers to engage in consumer transactions are covered because, although a private right of action is an important part of the UTPA, the Act's principal focus is on preventive action by the Attorney General, and the Attorney General needs to be able to take action against unlawful practices before any transactions have been completed. *See, generally,* ORS 646.618, 646.622, 646.626 and 646.632.)

Also pertinent to the UTPA's scope is subsection (7) of ORS 646.605, which defines a phrase used in subsection (1):

> "(7) 'Real estate, goods or services' means those which are or may be obtained *primarily for personal, family or household purposes.* * * *" (Emphasis supplied.)

Thus, transactions between business entities are not within the purview of the Act. One who seeks damages must show he brought, rented or otherwise obtained the real estate, goods or services in question for his personal use. *See Graham v. Kold Kist Beverage Ice Inc.,* 43 Or App 1037, 607 P2d 759 (1979); *Denson v. Ron Tonkin Gran Turismo, Inc.,* 279 Or 85, 90 n 4, 566 P2d 1177 (1977).

Having defined the UTPA's scope, I next turn to what is, in my view, the crux of this case: the definitions of unlawful trade practices. All the parties (and the majority) agree that the following portions of ORS 646.608(1) are pertinent to this analysis:

"(1) A person engages in an unlawful practice when *in the course of the person's business, vocation or occupation* the person:

"* * * * *

"(e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, guantities or qualities that they do not have. * * *;

"* * * * *

"(g) Represents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model if they are of another;

"* * * * *." (Emphasis supplied.)

The emphasized portion of ORS 646.608(1) is pivotal in this case. In my view, the phrase "* * * in the course of the person's business, vocation or occupation" means that, in order to be actionable under the UTPA, a person's actions must be committed in the course of some revenue-producing activity in which the person engages on a more than casual basis. Even more importantly, however, I believe that the phrase contemplates that, inasmuch as the UTPA speaks to practices committed in the course of a "business, vocation or occupation," the person who is entitled—as a private party—to take advantage of the act *must show that he has engaged in some consumer transaction with the offender.* I believe the foregoing conclusion follows ineluctably from the language of the private-right-of-action section of the UTPA, ORS 646.638(1):

"(1) Any person who suffers any ascertainable loss of money or property, real or personal, *as a result of wilful use or employment by another person of a method, act or practice declared unlawful* by ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or $200, whichever is greater. The court or jury, as the case may be, may award punitive damages. * * *" (Emphasis supplied.)

That is, where an offender has used an unlawful practice, the other party to the transaction, if he suffers any ascertainable loss, has a cause of action. The existence of a consumer transaction between the two parties is pivotal. Such a construction gives the UTPA all the scope it needs to accomplish its legislative purpose—it permits anyone who is injured by an unlawful practice in the course of an otherwise qualifying commercial transaction to sue.

The majority's view is otherwise. The majority opinion first deals with defendant's contention that there is no proof that it made any actionable representations to plaintiff or to a third party with the knowledge that they would then be communicated to plaintiff. It then makes this statement:

> "* * * The [UTPA] does not require that there be a loss to an individual consumer for there to be a violation. If there is ascertainable loss to a consumer, that consumer has a cause of action for general and punitive damages. ORS 646.638(1). The elements of the cause of action are specified in the statute and *the consumer may recover by alleging and proving that there was a wilful violation of the provisions of the Act and ascertainable damages as a result of a violation.* There is no requirement that the representations which constitute a wilful violation of the Act be made to the injured consumer. * * *" 59 Or App at 171.

In other words: If you commit an act of misrepresentation which violates the UTPA, and someone is damaged, it is irrelevant that you could have not foreseen that that person would ever receive your misrepresentation.

As the majority sees it, then, the UTPA requires only that there be a causal connection between the unlawful act and the harm; no vendor-vendee or other seller-consumer relationship between the parties is necessary. In fact, the parties could be total strangers. The difficulty with the majority's view is that, if it is accepted, the field of tort law will have undergone a fascinating *sub silentio* remodeling. One example should illustrate this point: A garageman, X, sells A a set of shock absorbers for his car. One shock absorber fails, sending the car out of control; it smashes into B's greenhouse. A discovers the shock absorbers were reconditioned, rather than new; he tells B. B sues X, not

not for negligence, but for violation of the UTPA. Because the sale by X to A did violate ORS 646.608(1)(e), (f) and (g), B would prevail under the majority rationale.

In this case, defendant is alleged to have given an inaccurate report on pest damage to a certain house *to a third party*. The third party paid for the report. Defendant is in the "business" of making such reports, not the business of selling real estate. ORS 646.608(1) is directed at *consumer transactions*. It does not, to be sure, strictly limit its liability to *sellers* of real estate, goods or services. Still, the alleged unlawful practice must occur *in connection with* a sale in order for the Act to apply. And the *sale* here was of real estate by the third party to plaintiff. There is no claim that the third party knew or had reason to know that defendant's pest report was erroneous. The third party is not even a defendant. Yet we hold today that a third party *who is not a seller* may be held liable to a purchaser under the UTPA where (1) it was not acting in conjunction with the seller and (2) in fact, it might not even have even known of the planned sale.

The proper rule would require that defendant be in the business of selling the misrepresented product, or be associated with the party that is in such a business, and that defendant commit the unlawful trade practice act knowing that the ultimate victim would receive the misrepresentation. Because the purposes of UTPA can, in my view, be fully vindicated without the adventuring which the majority undertakes in this case, I respectfully dissent.

Warren and Young, JJ., join in this dissent.