Argued and submitted November 13, 1985, resubmitted In Banc April 2, reversed and
remanded with instructions May 14, reconsideration denied September 5, petition for
review allowed October 21, 1986 (302 Or 158)

ANDOR,
*Appellant,*

*v.*

UNITED AIR LINES, INC. et al,
*Respondents.*

(A8301-00133; CA A32141)

719 P2d 492

Stewart M. Whipple, Portland, argued the cause for appellant. With him on the briefs were Alan H. Johansen, and Whipple, Johansen & McClain, Portland.

James Westwood, Portland, argued the cause for respondents. With him on the brief were William B. Crow, Steven O. Rosen, and Miller, Nash, Wiener, Hager & Carlsen, Portland.

ROSSMAN, J.

Warren, J., dissenting.

**ROSSMAN, J.**

Plaintiff brought this action to recover compensatory and punitive damages arising out of the crash of United Air Lines Flight 173 in Portland on December 28, 1978. Plaintiff was a passenger on the plane and named United and McBroom, the pilot, as defendants. United admitted liability for compensatory damages on the basis of McBroom's conceded negligence but contended that plaintiff was not entitled to punitive damages. Plaintiff based her claim for punitive damages on the alleged "negligence, flagrant misconduct and deliberate disregard of the rights and safety of others" by the pilot, the flight crew and United ground personnel in connection with the events immediately preceding the crash,[1] and by United maintenance personnel in failing to correct defects in the plane's landing gear that were known to them long before the crash. The jury returned a verdict for $161,275.32 in general and special damages, no punitive damages against McBroom and $750,000 in punitive damages against United. United moved for judgment notwithstanding the verdict as to the punitive damages, and the trial court granted the motion. Plaintiff appeals and contends that there was sufficient evidence on which the jury could base an award of punitive damages.[2] We agree and reverse.

Flight 173 was scheduled to arrive from Denver at the Portland International Airport at 5:13 p.m. The flight was normal until McBroom extended the landing gear. He described the "abnormal extension" as "a heavy to severe jolt-jolt * * *. This was not the normal slow extension, but immediate and was accompanied by a yaw to the right." Fearing a problem with the landing gear, McBroom advised the Portland control tower at 5:12 p.m. that the landing would be delayed. The tower advised the crew to proceed to an area

---

[1] The parties treat the flight crew and the ground personnel separately in analyzing whether there was evidence of misconduct sufficient to warrant the imposition of punitive damages. Because we conclude that the conduct of the pilot and flight crew alone could support the jury's punitive damages award and because the injurious events in which the two groups of employees were involved were the same, our discussion of the activities of the ground personnel is abbreviated and is designed only to provide an understanding of the factual background.

[2] Although plaintiff's notice of appeal designates McBroom as a respondent, no issue is raised as to him on appeal.

southeast of the airport in which the plane could circle while the crew attended to the situation.

The crew consulted a manual to diagnose the problem. They visually checked a mechanical indicator on the wing, which showed that the landing gear was in a down and locked position. Uncontradicted testimony established that that indicator provides an unerring positive indication that the gear is down and locked. McBroom still did not feel confident about the landing gear's safety, and at 5:40 p.m. he began consulting with ground personnel in Portland and San Francisco. After relating his situation, McBroom was informed "You've done everything you can do." At 5:42 p.m. McBroom reported that the plane had 7,000 pounds of fuel remaining and that he planned to hold for 15 to 20 minutes while the crew prepared the passengers for an emergency evacuation. The San Francisco dispatcher confirmed a 6:05 p.m. landing with McBroom.

At 5:49 p.m., with the gauges indicating that 5,000 pounds of fuel remained, the low fuel pressure warning lights illuminated. At 5:52 p.m. McBroom confirmed with United personnel in Portland that he would land at 6:05 p.m. with about 4,000 pounds of fuel. At 6:03 p.m. McBroom advised that he would begin his approach in three to five minutes and that the plane had 3,000 pounds of fuel left. At 6:07 p.m. the number four engine flamed out while the plane circled at 5,000 feet. The crew re-started the engine. At 6:13 p.m. two engines flamed out, and McBroom realized that he could not reach the airport. He crash-landed the plane about six miles southeast of the airport at 6:15 p.m.

McBroom testified that at the time of the accident he thought, because of his training, that the fuel gauges were completely accurate unless they were obviously erratic or inoperative. Subsequent to the crash, he learned that there was an allowable tolerance in the fuel supply indicator system, to the extent of 426 pounds for each of the eight fuel tanks, and an additional 1,000 pounds for the totalizer system. That amounts to a total tolerance, or potential inaccuracy, of 4,408 pounds. He testified that, if he had known of those tolerance figures at the time of the accident, he would have taken them into account in deciding how long he could safely stay aloft.

There was evidence that the initial abnormal extension was due to preexisting corrosion in the plane's landing

gear. The parts of the landing gear which were corroded and failed when the gear was extended were the threads of an eyebolt and a piston. They were part of a hydraulic system which had the function of slowing the extension of the landing gear. Plaintiff's uncontradicted evidence shows that United employes were aware of the corrosion problem on DC-8's in general and on the right landing gear of this plane in particular. United had detected the corrosion by means of a gamma ray inspection and had attempted to seal the connection to retard the corrosion. United stopped the gamma ray inspections in 1977, when it installed a "bungee system improvement," which ostensibly guaranteed that the landing gear would come down and lock in the proper position if the hydraulic system failed. Although, as we will discuss below, United argues that its maintenance of the landing gear provides no basis for the jury's award of punitive damages, it does not dispute that its personnel were aware of the corrosion in the parts, that the parts were not replaced and that the corrosion was not cured.

■ Plaintiff assigns error to the trial court's granting of the judgment notwithstanding the verdict. She argues that there was ample evidence from which the jury could find that United's employes were guilty of "aggravated" or "wanton" misconduct, warranting the assessment of punitive damages. *See* n 3, *infra.* Where, as here, damages are sought against a corporate defendant solely on a vicarious liability theory, based on its employes' conduct, punitive damages may be imposed on the corporation if such damages could have been imposed on any of the employes personally. *Stroud v. Denny's Restaurant,* 271 Or 430, 437, 532 P2d 790 (1975); *Abrams v. Mike Salta Pontiac,* 51 Or App 495, 625 P2d 1383, *rev den* 291 Or 151 (1981).

United's overriding argument is that there was insufficient evidence to support the jury's finding that McBroom, the United employes who were not named defendants or any combination of them were guilty of "aggravated misconduct" or "wanton misconduct."[3] It is well-established that whether a

---

[3] The Supreme Court articulated the test for determining when punitive damages are recoverable in *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 425, 435 P2d 306 (1967):

"Punitive damages can only be justified on the theory of determent. * * * It is

defendant's conduct is aggravated or wanton or comes within any of the other characterizations that permit the imposition of punitive damages is for the jury to decide, as long as there is evidence upon which the finding can be based. *Friendship Auto v. Bank of Willamette Valley,* 300 Or 522, 716 P2d 715 (1986); *State ex rel Young v. Crookham,* 290 Or 61, 615 P2d 1268 (1980); *2-D's Logging v. Weyerhaeuser,* 53 Or App 677, 632 P2d 1319, *rev den* 292 Or 109 (1981). However, as we described in *2-D's Logging,* the Supreme Court and this court have periodically succumbed to the temptation to make an impermissible independent normative evaluation of the aggravatedness of a defendant's conduct in the guise of reviewing for evidentiary sufficiency. 53 Or App at 686-89. That is essentially what United asks us to do here, and that is essentially what the dissent does. We decline to do so. Our function is to determine whether the evidence and the inferences, taken at their strongest, rationally support the jury's finding; it is not our function to make our own assessment of how defendants' conduct should be characterized.

■     United argues that there was insubstantial evidence that McBroom's conduct and that of the other members of the flight crew was wanton or was anything more than negligent. We disagree. McBroom continued to fly the plane until the

---

only in those instances where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent, that the use of punitive damages is proper. Regardless of the nomenclature by which a violation of these obligations is described (grossly negligent, willful, wanton, malicious, etc.), it is apparent that this court has decided that it is proper to use the sanction of punitive damages where there has been a particularly aggravated [misconduct] * * *." (Citations omitted.)

The test has been stated in various ways by the appellate courts, but *Noe* provides the most useful formulation for application to the facts of this case.

The court instructed the jury here:

"[Y]ou may award punitive damages only if defendants' conduct goes beyond mere carelessness to a willful or wanton disregard of risk of harm to others of a magnitude evincing a high degree of social irresponsibility. In considering punitive damages, you must first determine whether the defendants or either of them were guilty of wanton misconduct, which was a cause of damage to the plaintiff.

"Wanton misconduct is conduct amounting to a deliberate disregard of the rights and safety of others. Wanton misconduct is something worse than negligence but less than intentionally hurting someone."

United excepted to the instruction in the trial court but does not challenge it on appeal. *See Artman v. Ray,* 263 Or 529, 501 P2d 63, 502 P2d 1376 (1972).

fuel supply was exhausted, notwithstanding the positive mechanical indications about the secure position of the landing gear and the advice from the ground that everything had been done that could be done, except to land the plane. It was inferable, *inter alia,* that McBroom's failure to heed the ground personnel or the instruments evinced an "I know better than you do" attitude under circumstances where following the human and mechanical signals was essential to the safety and life of the plane's passengers. The evidence was sufficient to support a finding by the jury, in the words of the court's instruction, *see* n 3, *supra,* that McBroom and those assisting him acted deliberately with "wanton disregard of risk of harm to others." *See Friendship Auto v. Bank of Willamette Valley, supra,* 300 Or at 534-35 n 13.

■ United suggests that, even if the jury *could* have found that McBroom's conduct warranted punitive damages, it is virtually impossible that the jury *did* so find, because it awarded no punitive damages against McBroom personally. However, the jury was instructed:

> "If you decide this issue against the defendants or either one of them, you may award punitive damages although you are not required to do so since punitive damages are discretionary."

United makes no argument on appeal that the instruction was erroneous.[4] Under the instruction, the jury was permitted to find that McBroom's conduct warranted punitive damages and that United was vicariously liable for such damages, even though none were assessed against McBroom himself.

■ We also conclude that United's employes' failure to replace the corroded landing gear parts or correct the corrosion furnishes an additional and separate ground upon which the jury properly could have based its award of punitive damages.[5] United argues that its failure to correct the corrosion or replace the parts did not offend Federal Aviation Administration (FAA) requirements, which mandated only

---

[4] We do not suggest that it was. *See McGregor v. Barton Sand & Gravel, Inc.,* 62 Or App 24, 660 P2d 175 (1983).

[5] The trial court did not submit a special verdict form, enabling the jury to specify which United employes and which actions were the basis for the award. United does not argue on appeal that the court's failure to submit a special verdict form was error.

that landing gear mechanisms be "overhauled" after every 20,000 miles of operation. However, we do not understand the FAA standards governing the minimal frequency of overhauls as excusing United's inattention to a *known* defect in the landing gear mechanism. *See Bibler v. Young,* 492 F2d 1351 (6th Cir), *cert den* 419 US 996 (1974). United also points to evidence of its compliance with FAA directives and manufacturer's standards in connection with the maintenance and inspection of the system. Suffice it to say that that evidence did not compel a finding in United's favor as a matter of law either on the issue of improper maintenance or on the issue of punitive damages.

■     United argues further that the corrosion in the eyebolt and piston was inconsequential, because the landing system as a whole operated properly and "is designed to assume the down, locked and safe position even when the eyebolt is severed." United points to the fact that the gear *was* down and locked at the time of the crash. As a corollary to its argument that the corrosion did not constitute an unsafe condition, United maintains that punitive damages cannot properly be based on the failure to do anything about the corroded parts, because the corrosion was not the cause of the crash. It explains:

> "[E]ven if the trial court might have determined that United could be found negligent in its inspection or maintenance of the eyebolt, it still could have found that any such act was not the 'cause' of plaintiff's injury. This is the legal test embodied in 2 Restatement (Second) of Torts §435(2):
>
>> " 'The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears *to the court* highly extraordinary that it should have brought about the harm.' (Emphasis supplied.)
>
> "This case involves just such a 'highly extraordinary' matter. So many intervening and extraordinary factors operated to bring about plaintiff's injury that the trial court was plainly unable to conclude that United's maintenance of an eyebolt was a cause of plaintiff's harm.
>
> "For an application of Restatement § 435(2), see *Allen v. Shiroma/Leathers,* 266 Or 567, 514 P2d 545 (1973). A driver had caused an auto accident, after which the plaintiff, who was directing traffic around the accident, was struck by his

own auto which he had asked a bystander to move. Clearly, plaintiff's injury never would have occurred but for the negligence of the original driver. But the trial court entered judgment nov in favor of the original driver, and the Oregon Supreme Court affirmed. The same attenuated chain of 'causation' exists in this case. Like the defendant in *Allen*, United in this case could not sensibly foresee any connection between an eyebolt failure (which left the landing gear safely locked) and the crash of an airplane from fuel exhaustion."

United's argument focuses on whether the landing gear would have failed if McBroom had attempted to land. Whether or not United would be correct if that were the only way in which the corrosion could have contributed to the cause of the crash is a question we need not answer, because plaintiff's alternative theory of causation is amply supported by the evidence. The effect of the defective operation of the eyebolt was to cause the heavy landing gear mechanism to fall into the locked position, with dramatic auditory effects and movement of the aircraft. McBroom stated that "[t]he crew and I were alarmed by this and concerned that the gear was broken." Although McBroom's reaction may have been wrong and may have led to the cause in fact of the crash, his reaction was caused by the malfunction of the eyebolt which resulted from the corrosion.

We do not agree with United's intervening cause-unforeseeability argument. United phrases the question as being whether it could "sensibly foresee any connection between an eyebolt failure (which left the landing gear safely locked) and the crash of an airplane from fuel exhaustion." The alternative to that formulation of the question is whether United could reasonably have foreseen that the defect in the eyebolt could cause a fast, loud and jerking extension of the landing gear mechanism which the pilot and crew might understand as meaning that there were serious problems with the landing gear, with the result that they were hesitant to land until they had determined what the problems were. The jury could have found from the evidence that the answer to that question is yes. We conclude that it was a question for the jury whether the inattention to the corrosion problem by one group of United employes caused a second employe or group of employes to misperceive what the problem with the landing gear was, and whether the uncorrected corrosion therefore contributed causally to the crash.

■ United argues that many of the cases on which plaintiff relies are inapposite, because they involved punitive damages for intentional or wilfully injurious torts rather than for acts and omissions of the kind United's employes committed. United's implicit premise appears to be that punitive damages should not be recoverable in any action where the gravamen is an unintentional tort or a tort that was not intended to injure. Until recent years, the law in Oregon was *clearly* contrary to United's premise. *See, e.g., Harrell v. Travelers Indemnity Co.,* 279 Or 199, 567 P2d 1013 (1977); *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 435 P2d 306 (1967). The principal recent case cited for the proposition that the law has changed is *Chamberlain v. Jim Fisher Motors, Inc.,* 282 Or 229, 578 P2d 1225 (1978). *Chamberlain can* be understood to suggest that, at least in actions for deceit, punitive damages are not recoverable if the tort which constitutes the gravamen of the action is "reckless," "grossly negligent" or anything less than intentional or deliberately injurious, regardless of the defendant's mental state or any aggravating factors that accompanied the tortious act. 282 Or at 235-38.

However, if that suggestion was intended in *Chamberlain,* we understand it to have been greatly attenuated or withdrawn by the court's later opinion in *Schmidt v. Pine Tree Land Dev.,* 291 Or 462, 631 P2d 1373 (1981). There, the court said that it "pass[ed] by," apparently without decision, "defendants' suggestion that punitive damages for misrepresentation should be limited to intentional fraud." 291 Or at 466. Before declining to decide that question, the court stated:

> "[T]o justify punitive damages the conduct must go beyond mere carelessness to a *willful or reckless* disregard of risk of harm to others of a magnitude evincing a high degree of social irresponsibility." 291 Or at 466. (Emphasis supplied.)[6]

*See also Wolf v. Nordstrom,* 291 Or 828, 835, 637 P2d 1280 (1981) ("recklessness, by itself, will not support an award of punitive damages," but "recklessness may be a part of

---

[6] The court also said in *Schmidt* that it "has not held that punitive damages may *always* be recovered for recklessly false representations [citing *Chamberlain*]." 291 Or at 465. (Emphasis supplied.)

aggravating circumstances which justify an award of punitive damages").[7]

We conclude that, under still controlling authority, punitive damages are recoverable in actions where the gravamen is an unintentional tort and where "wanton misconduct" accompanies the defendant's act or omission. As we have noted, *see* n 3, *supra,* the jury was so instructed here. There was evidence to support the jury's award of punitive damages against United, based on either the conduct of the flight crew or that of United's maintenance personnel.[8] The trial court erred by granting the judgment notwithstanding the verdict.

Reversed and remanded with instructions to reinstate the verdict and to enter judgment in accordance with the verdict.

**WARREN, J.,** dissenting.

I disagree with the majority's conclusion that evidence as to the conduct of the flight crew and United's maintenance of the landing gear supports the jury's finding of aggravated misconduct and its awarding punitive damages. First, I think that there was no evidence from which a jury could find that McBroom and the rest of the flight crew were guilty of aggravated misconduct. Faced with an unusual and potentially hazardous situation, McBroom took steps to diagnose the problem and to land the plane safely. Those precautions, as well as preparing the passengers for an emergency landing, took additional time. While the plane circled, it continued to burn fuel. McBroom's alleged mistakes were in failing to monitor the fuel adequately so that he was forced to land short of the airport and in disregarding reliable signs that the landing gear was in a down and locked position. His belief that the fuel gauges were accurate and that he had more fuel than he actually did is relevant in evaluating the extent to

---

[7] We do not imply a view on whether United's premise *should* be the rule. We hold only that it *is not* the rule and that we are not free to adopt it, in the face of existing Supreme Court authority.

[8] Given our conclusion that punitive damages are not confined to actions for intentional torts and given the parties' arguments, we need not decide whether punitive damages would also be supportable here on the theory that the maintenance personnel acted wilfully rather than wantonly.

which his conduct was negligent. McBroom was responsible for the safety of his crew and the passengers and, although he may have been negligent, I do not think the evidence permits an inference that he acted with " 'wanton disregard of harm to others.' " 79 Or App at 317. McBroom's precautionary behavior is not the sort of conduct which is appropriately punished as a deterrent to future similar misbehavior. *Schmidt v. Pine Tree Land Dev.*, 291 Or 462, 466, 631 P2d 1373 (1981); *Noe v. Kaiser Foundation Hosp.*, 248 Or 420, 425, 435 P2d 306 (1967).

Second, I disagree that evidence of United's maintenance of the landing gear supports the award of punitive damages. I do not think that a rational jury could find that it was reasonably foreseeable that United's allowing the hydraulic mechanism to remain corroded would initiate this chain of events and ultimately cause a crash. *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 609, 469 P2d 783 (1970), holds that a court may remove the issue of a defendant's negligence from the jury if the "plaintiff's injury and the manner of its occurrence was so highly unusual that we can say as a matter of law that a reasonable man, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur." I would apply this rule, based on Restatement (Second) Torts § 435(2) (1965), to hold, as a matter of law, that the accident was not a reasonably foreseeable result of allowing the two parts of the hydraulic system to corrode and fail. Although United knew that the parts could fail, it took precautions to insure that, in the event the hydraulic system did fail, the landing gear would still come down and lock in the proper position. All of the evidence establishes that the back-up system is safe. It was not reasonably foreseeable as a matter of law that, if the hydraulic system failed and the landing gear freely fell into a locked position, it would cause the crew to panic and negligently fail to land the plane. This series of events was so extraordinary that United's conduct in allowing the hydraulic system to corrode, even if negligent, was not a legal cause of plaintiff's injury and United could not have been held liable for compensatory damages on the basis of its conduct in maintaining the landing gear. It follows that it cannot be held liable for punitive damages for conduct which was too remote a cause to sustain a verdict for plaintiff.

Moreover, even if United could be found liable for

negligence in this respect, I think that its conduct was not, as a matter of law, a sufficiently aggravated violation of societal interests to justify punitive damages. In *Falls v. Mortensen*, 207 Or 130, 138, 295 P2d 182 (1956), the Supreme Court quoted from Prosser, Torts (2d ed 1971) the three requirements for the imposition of punitive damages:

> " '* * * The elements necessary to characterize an injury as wantonly or wilfully inflicted are (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another, (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. * * *' "

Although negligence, as a basis of liability, requires that a plaintiff's injury be a reasonably foreseeable consequence of a defendant's negligence, punitive damages require a greater degree of foreseeability: "[I]t must be *apparent* that the result is *likely* to prove *disastrous* to another." (Emphasis supplied.) In this case, the accident was so remote a consequence of United's conduct in maintaining the gear that it was not, as a matter of law, a *likely* consequence of United's actions. Because I think that the evidence does not support an award of punitive damages, I would affirm the judgment n.o.v. Accordingly, I dissent.

Buttler, J., joins in this dissent.