**Robyn DENNIS, Plaintiff,**

v.

**State of NEVADA and The Nevada State Department of Prisons, Defendants.**

**No. CVN000604LRHRAM.**

United States District Court, D. Nevada.

Sept. 11, 2003.

Mark Mausert, Law Office Of Mark Mausert, Reno, NV, for Plaintiff.

David Creekman, Sparks City Attorney's Office, Sparks, NV, Patrick King, Susan Lee, Nevada Attorney General's Office, Carson City, NV, for Defendants.

### ORDER

HICKS, District Judge.

Before the Court is the Nevada Department of Corrections' (formerly the Nevada Department of Prisons) Motion for Summary Judgment (# 25), filed November 30,

2001. The Plaintiff filed an opposition on December 26, 2001, and the Defendant replied on January 9, 2002. Upon review of the evidence presented and the oral argument of the parties, the Court makes the following disposition.

## I. Factual and Procedural Background

This case arises from the Plaintiff's allegations of sexual harassment at the Northern Nevada Correctional Center by one of her supervisors. Robyn Dennis ("Dennis") alleges that beginning in January or February of 1999, and continuing through July of 1999, she was sexually harassed by her supervisor, Lieutenant Craig Luce ("Luce"). Dennis was hired as a correctional officer trainee on June 27, 1998, at the Northern Nevada Correctional Center and was promoted in June of 1999 to correctional officer following her successful completion of a one-year probationary period. Dennis alleges that on or about January 1999, when she and Luce were both working the graveyard shift, Luce began a course of harassment. According to Dennis, while she was assigned to a control room at the prison, Luce would spend the entire shift in the control room with her. Dennis claims this was unusual for someone in Luce's supervisory role, and it made her feel isolated from other officers. During these shifts, Dennis alleges that Luce made physical contact with her such as touching her hands, ears, hair, and face. Dennis also alleges that while only the two of them were in the control room, Luce would sit unnecessarily close to her. According to Dennis, Luce frequently attempted to convince Dennis to begin a dating-relationship with him.

During a one-week period in April, Dennis alleges that Luce made two attempts to kiss her while on the job. It appears that after these incidents, Dennis reported Luce's behavior to a fellow employee, Richard Truesdell ("Truesdell").[1] Dennis

---

1. During the course of the relevant events, the    record reflects that Dennis and Truesdell

also claims to have confronted Luce about his behavior. At this same time, according to Dennis, she and Truesdell debated whether to file a complaint of sexual harassment by Luce. Dennis testified that she was reluctant to file a complaint because she was still in her probationary period, and did not want to jeopardize completing the probationary period successfully. Ultimately, Truesdell filed a formal complaint to Assistant Warden Budge on July 21, 1999. According to Truesdell, Luce was immediately transferred to the day shift. As a result of the complaint, Dennis was interviewed by Officer Colleen Cohan, an Equal Employment Opportunity official on July 23, 1999, to confirm Dennis' allegations of Luce's misconduct. Officer Cohan conducted a formal investigation and arrived at the conclusion that Dennis' charges were unsubstantiated.[2] On December 1, 1999, Dennis filed a formal charge of discrimination with the Nevada Equal Rights Commission.

Dennis claims her career has been adversely affected by the episode and that she has been negatively retaliated against by employees of the Correctional Center. She claims that she has been ostracized by her fellow co-workers, and that issues have arisen with regard to her time cards and her overtime opportunities. She also claims that following the July 21, 1999, report she suffered arbitrary shift and position changes as well as in some instances prolonged stints in particular shifts. However, Dennis has made no showing of any monetary losses associated with her shift assignments. And, the record reflects that the Defendant had in place an established grievance procedure to address conflicts arising over transfers and that Dennis failed to take advantage of the process.

Dennis filed the present complaint on November 28, 2000, charging the State of Nevada and the Nevada State Department of Prisons with (1) Hostile and/or Offensive Work Environment; (2) Retaliation; and (3) Violation of Her Constitutional Rights—42 U.S.C. § 1983. The Department of Corrections brings to the Court's attention that the Nevada State Department of Prisons is properly identified as the Nevada State Department of Corrections and that it is an agency of the state of Nevada. Good cause appearing, the caption in this action shall be, and hereby is, amended to reflect a single defendant to be identified as State of Nevada, *ex rel.* the Department of Corrections.

The Defendant filed the current Motion for Summary Judgment on November 30, 2001, and argues that Dennis has failed to demonstrate a genuine issue of material fact regarding the merits of her claims.

## II. Standard of Review

Summary Judgment may not be granted unless the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the Court must view all facts in the light

---

were involved in some romantic capacity. Truesdell also participated in this case as a co-plaintiff. However, he moved to voluntarily dismiss his claims against the Defendant and this Court granted the motion on July 3, 2002.

**2.** Dennis' claims that Officer Cohan's investigation was deficient in one major respect.

Apparently, in 1998, a former employee of the Defendant successfully sued for sexual harassment by Luce. Dennis contends that Officer Cohan's investigation should have taken into account prior allegations of Luce's sexually harassing behavior in determining the merits of Dennis' claims.

most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party has met his burden, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the mere "allegations or denials" of his pleadings. Fed.R.Civ.P. 56(e). Thus, in resolving a motion for summary judgment, the Court must determine whether a genuine factual dispute exists based on evidence cited in the record, and must determine, based on the substantive law at issue, whether the fact in dispute is actually material.

■ Because this is an employment discrimination and retaliation case, the Court notes that a plaintiff in an employment discrimination action "need produce very little evidence in order to overcome an employer's motion for summary judgment." *Chuang v. University of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir.2000). This is because "the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir.1996) (citations and internal quotation marks omitted). This caution applies to Dennis' retaliation claim as well since retaliation claims often depend on inferences of employer motive. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). With these considerations in mind, the Court turns its attention to Defendant's Motion.

## III. Discussion

### A. *Hostile Work Environment*

Dennis' first cause of action for hostile work environment arises from alleged sexual harassment suffered at the hands of Luce, her supervisor at the Correctional Center. Before the Court can address the Defendant's potential liability for supervisory harassment and determine whether summary judgment is appropriate as to this claim, the Court must first determine whether Dennis has sufficiently alleged a *prima facie* case of sexual harassment by her supervisors. To show a *prima facie* case of hostile work environment due to sexual harassment, Dennis must prove "(1) that she was subjected to conduct of a harassing nature; (2) that this conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Pavon v. Swift Trans. Co., Inc.*, 192 F.3d 902, 908 (9th Cir.1999).

■ The Court finds that Dennis has provided sufficient evidence to create a genuine issue of material fact as to the first and second prongs of the *prima facie* test. Specifically, Dennis has presented sufficient facts by way of deposition testimony that she was subject to conduct of a harassing nature and the conduct was unwelcome. Dennis' discomfort with the situation is corroborated by Truesdell's testimony. The fact that she waited some months and attempted to take care of the problems without alerting her employer does not sufficiently rebut the existence of her displeasure. Whether Dennis meets the third prong of the *prima facie* test is a more difficult question.

Under Title VII of the Civil Rights Act of 1964,

[i]t shall be unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's

race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1). Sexual harassment so severe or pervasive that it alters the terms and conditions of employment and creates an abusive or hostile working environment violates Title VII. *See Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). To be actionable under Title VII, the sexual hostile work environment must be both objectively and subjectively offensive. *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Accordingly, the work environment must be such that a reasonable person would find it abusive or hostile, and one in which the victim herself perceived as hostile. *See id.* "Whether the workplace is objectively hostile must be determined from the perspective of a reasonable person with the same fundamental characteristics." *Fuller v. City of Oakland,* 47 F.3d 1522, 1527 (1995). To make the determination as to the objective severity of the alleged harassment, the court must consider the totality of the circumstances, including but not limited to the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367. Instances of "simple teasing, offhand comments, and isolated incidences (unless they are extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal quotes and citations omitted).

█ Dennis' deposition testimony provides the requisite evidence of her subjective belief as to the abusive and hostile nature of her working environment. Objectively, however, Dennis must show a genuine issue of material fact as to whether a reasonable person in her position would have found the working environment abusive and hostile and whether the hostile environment interfered with her work performance. Dennis' evidence consists first and foremost of her deposition testimony of the facts. Dennis also provides Truesdell's testimony that he believed something inappropriate was taking place and was concerned. Taking into account Dennis' testimony and her fellow employee's corroboration of the difficult situation that Luce was allegedly creating, the Court finds that Dennis has shown sufficient evidence to support a finding that a reasonable person in Dennis' position could find that her working environment was abusive and hostile and that the hostile working environment reasonably interfered with Dennis' work performance. Thus, Dennis has made a prima facie showing of a hostile work environment caused by sexual harassment.

### B. *Employer's Liability*

The Defendant argues that it is entitled to summary judgment based on the application of the affirmative defense to employer liability announced in *Faragher.* While Title VII does not make employers "automatically liable for sexual harassment by their supervisors," *Meritor,* 477 U.S. at 72, 106 S.Ct. 2399, an employer will be held vicariously liable for its supervisor's sexual harassment unless the employer can prove the *Ellerth/Faragher* affirmative defense. The Defendant may assert this affirmative defense only if no tangible employment action was taken against Dennis. *See Faragher,* 524 U.S. at 807, 118 S.Ct. 2275. The defense is comprised of two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportuni-

ties provided by the employer or to avoid harm otherwise. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

■ The Defendant asserts that Dennis did not suffer any tangible employment action at the hands of the Defendant. A tangible employment action is a significant change in employment status, "such as hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 761, 118 S.Ct. 2257. In most cases, a tangible employment action inflicts direct economic harm. *Id.* at 762, 118 S.Ct. 2257.

Dennis claims that Luce actively participated in changing or altering her shifts and positions. Upon review of the record, it appears that prior to filing the official complaint, Dennis was moved out of the control bubble and into a tower. (Opp'n, Ex. E, 122:1–129:24). Dennis was unhappy with this reassignment, and claims she made her displeasure known to Sgt. Wiley. *Id.* After the official complaint was filed in July, despite the fact that Luce was moved to the day shift, Dennis claims she requested a shift change from graveyard to the day shift. (Opp'n, Ex. E, 131:11–12). According to Dennis, Luce was in charge of shift changes, and instead of being reassigned to the day shift, she was given a swing shift; a shift that Luce knew was undesirable to Dennis due to her childcare arrangements with her ex-husband. (Opp'n, Ex. E, 131:13–21). In response to Dennis' displeasure, she was notified that she could not work the same shift as Luce. (Opp'n, Ex. E, 132:12–13). As a result, it appears that Dennis was returned to her original shift on graveyard. (Opp'n, Ex. E, 132:23–24). However, the record reflects that at no time did Dennis avail herself of the internal grievance procedures in place to address employee objections regarding transfers.

■ These position changes do not rise to the level of tangible employment actions. A reassignment to a more inconvenient job or position is insufficient to show tangible employment action. *See Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir.1994). The record simply does not reflect that Dennis suffered a materially adverse change in her employment status. She was not terminated, she did not receive a reduction in her wage or salary, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities. *See Crady v. Liberty Nat. Bank & Trust Co. of Ind.,* 993 F.2d 132, 136 (7th Cir. 1993). Accordingly, the Defendant is entitled to assert the *Ellerth/Faragher* affirmative defense to vicarious liability, which is subject to a preponderance of the evidence standard. Where as here, the moving party has the burden of proof and persuasion, its "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986). This means that the Defendant must "establish beyond peradventure *all* of the essential elements of the ... defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). Therefore, the Court must determine whether the evidence in the record can support the holding that no reasonable trier of fact could find other than for the Defendant on the issue of the affirmative defense.

■ Under the first prong of the affirmative defense, the legal standard for evaluating an employer's efforts to prevent and correct harassment, is "whether the employer's actions as a whole established a reasonable mechanism for prevention and correction." *Holly D. v. California Institute of Technology,* 339 F.3d 1158 (9th

Cir.2003). The Supreme Court, in explanation of this element, has stated that "while proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may be appropriately addressed in any case when litigating the first element of the defense." *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257.

In the present case, it is undisputed that the Defendant had in place a non-harassment policy and a procedure to address harassment problems. It is also undisputed that Dennis was aware of these procedures. The written policy prohibited behavior, identified contact personnel, and established procedures to investigate and resolve claims. (Mot.Simm. J., Ex. F). In short, there is nothing unreasonable about the policy itself. Dennis' contention, rather, is essentially that the policy was unreasonably implemented. In other words, Dennis claims that (1) some supervisors failed to follow the policy after they became aware of the alleged harassment, and (2) that Cohen failed to investigate the matter appropriately.

As to the first argument, Dennis seeks to impute the alleged knowledge of other employees of Luce's unwanted behavior to the Defendant, thereby demonstrating that upon receiving the knowledge, the Defendant failed to affirmatively act to remedy the alleged discrimination. However, Dennis presents insufficient evidence to support her claim. Assuming that these employees were supervisors with hiring and firing capabilities or that they had a general responsibility for passing along such information to the appropriate employees, there is insufficient evidence that these employees received a specific complaint from Dennis or that any of them were aware of the alleged conduct by Luce. *See Brooks v. City of San Mateo*, 229 F.3d 917,

925 n. 6 (9th Cir.2000). It appears that Dennis debated with Truesdell, her boyfriend at the time, whether to even make a formal complaint, and when Truesdell did finally complain on Dennis' behalf, she became very upset. (Mot.Simm. J., Ex. E, 27:4–9). Especially telling is the fact that Truesdell's complaint came some three months following the most egregious of Luce's alleged misconduct. That is to say that three months after the alleged physical confrontations, Dennis was still reluctant to complain to her superiors. At most, the record demonstrates that Dennis voiced her discomfort with Luce, but fell short of actually notifying anyone of the severity of the situation. Specifically, when asked whether she reported Luce's advances to a co-worker, Sg. Wiley, Dennis replied "did I mention anything to [Wiley]? No I didn't." (Mot.Simm. J., Ex. D, 11:12–14).

What is clear from the record is that upon receiving the formal complaint, the Defendant immediately moved Luce to a different shift than Dennis and promptly began an investigation. Dennis' complaint that the ensuing investigation was deficient does not cast sufficient doubt as to the Defendant's commitment to curbing sexual harassment. Where an employer "takes prompt steps to stop the harassment, liability cannot be premised on perceived inadequacies in the investigation." *Swenson v. Potter*, 271 F.3d 1184, 1198 (9th Cir.2001). In this case, upon receiving the formal complaint, filed by Truesdell on behalf of Dennis, Luce was promptly moved, and an investigation was conducted. Dennis does not claim that she suffered any additional sexual harassment at the hands of Luce after the formal complaint was filed.

These facts overlap the second element of the affirmative defense; namely, whether Dennis unreasonably failed to take ad-

vantage of the complaint procedures that were available to her. *See Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257 (1998). The crux of the Defendant's argument is that Dennis did not avail herself of the formal corrective or preventive measures available at the Correctional Center until the end of July, when Truesdell made the formal complaint on her behalf. There is nothing in the record to suggest that throughout the relevant time period, Dennis was anything but reluctant to make a formal complaint. In opposition, Dennis contends that various supervisors or employees had knowledge of her discomfort and failed to act in their own regard. She also contends that as a probationary employee, she was concerned about what impact a formal complaint would have on her employment status. The Court has already determined that there exists insufficient evidence that supervisors and coworkers had knowledge to a sufficient degree to create a duty to report or proactively respond to Dennis' concerns. This, coupled with her complete failure to formally report the alleged harassment makes the argument that Dennis' actions were reasonable under the circumstances meritless. Accordingly, the Court finds that no reasonable trier of fact could find other than for the Defendant on the issue of the affirmative defense, and summary judgment is granted in favor of the Defendant and against Dennis as to her hostile work environment claim.

### B. *Retaliation*

■ Dennis' complaint also contains a claim of retaliation in violation of Title VII. The Court understands Dennis' claim to consist of the following adverse employment actions: (1) that she was denied shifts that she wanted; (2) she was transferred to shifts that she regarded as undesirable; (3) that she was forced to remain on graveyard shift; (4) that her time sheets were mishandled; and (5) that she

was ostracized to some extent by her peers.

To make out a *prima facie* case of retaliation under Title VII, 42 U.S.C. § 2000e-(3)(a), Plaintiff must establish 1) that she filed a charge of discrimination or engaged in other protected activity; 2) that her employer subsequently took adverse employment action against her; and 3) causation between the first two elements. *See Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir.1994). Once a *prima facie* showing is made, the burden then shifts to the defendant/employer to provide a legitimate, nondiscriminatory reason for its actions. *See id.* at 1464–65. If the employer meets that burden, then the fact finder is left to determine if the employee presented evidence capable of proving that the employer's proffered reasons for the adverse employment action were a pretext for illegal retaliation. *See id.*

■ In filing a complaint with Officer Cohen, Dennis clearly engaged in protected activity and satisfied the first prong of her prima facie case. As to the second prong, the Ninth Circuit has pronounced that "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir.2000). Dennis contends that after the initial formal complaint was filed, Luce was still in charge of her scheduling, and upon her request to move from the graveyard shift to the day shift, Luce moved her to swing shift with Thursday and Friday as her days off. Dennis argues that Luce knew that placing her on the swing shift would interfere with her ability to provide care for her child.

The Defendant argues that Dennis failed to take advantage of internal grievance procedures to resolve disputes over transfers. The Defendant also argues that the

Ninth Circuit does not deem lateral transfers that do not include corresponding salary or benefit reductions as adverse employment actions. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir.1996); *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 n. 6 (9th Cir.1994). Under Dennis' scenario, the Defendant should have moved her off graveyard, and on to the day shift in order to address the sexual harassment problem. Instead, the Defendant moved Luce to a day shift, thereby leaving Dennis with the choice to stay in graveyard or move to a swing shift. The Court declines to hold that after filing a sex discrimination complaint, unless the claimant is transferred according to his or her preference, the employer is guilty of unlawful retaliation. In this instance, the Defendant determined, after making a finding that Dennis' claims were unsubstantiated, that she and Luce still could not work together on the same shift. This is a reasonable response under the circumstances and does not constitute retaliation for a protected activity. Moreover, the Defendant had a grievance procedure in place for disputes over transfers (Mot. Simm. J., Ex. J). Like the sexual harassment complaint procedure, there is no evidence that Dennis took advantage of the grievance procedure either.

█ Dennis also claims that the Defendant intentionally mishandled her time sheets and required her to remain on the graveyard shift for over two years. However, Dennis does not deny that ultimately the Defendant paid her according to what she was owed, and that there is no set time that an employee might remain on the graveyard shift. Once again, the employee grievance procedure was available to Dennis and it was not utilized. Lastly, despite claims of ostracism by her fellow employees, mere ostracism does not constitute an adverse employment action. *See Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 869 (9th Cir.1996).

In light of these facts, the Court finds that Dennis has not presented sufficient evidence to create a genuine issue of material fact as to the retaliation claim. Accordingly, summary judgment is granted in favor of the Defendant and against Dennis as to this claim.

### C. § 1983 Claim

█ Finally, the Defendant requests summary judgment as to Dennis' third cause of action, in which she charges a violation of her civil rights. *See* 42 U.S.C. § 1983. As the Defendant notes, § 1983 does not provide a remedy for statutory violations where Congress, in enacting a statute has indicated an intent to preclude the use of § 1983 as an enforcement mechanism. *See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19–20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). In this circuit, however, Title VII does not necessarily in all cases preclude a concurrent action under § 1983. *See Roberts v. College of the Desert*, 870 F.2d 1411, 1415 (9th Cir.1988). In this case, Dennis has not responded to the Defendant's challenge to her § 1983 claim, and has not provided the Court with any argument that this claim is different in substance from her Title VII claim. *See* Local Rule 7–2. Accordingly, summary judgment is appropriate as to Dennis' third cause of action.

IT IS THEREFORE ORDERED that the Defendant's Motion for Summary Judgment (# 25) is GRANTED.

IT IS FURTHER ORDERED that the Court Clerk shall amend the caption of this action to reflect the name of the single defendant in this action as State of Nevada, *ex rel.* the Department of Corrections.